## HORATIO ELY v. JOHN PERRINE, junior.

A refusal by the sheriff to deliver a deed to the purchaser at a sheriff's sale, when rightfully demanded, will not absolve the purchaser from his obligation to comply with his contract, if after such refusal by the sheriff the purchaser offer to accept the deed.

Where the complainant's mortgage covers several parcels of land, which are covered by subsequent incumbrances, the decree may direct the whole of the property to be sold, and the proceeds applied to satisfy as well the subsequent incumbrances as the mortgage of the complainant; and although the complainant's mortgage is satisfied by the sale of part of the premises, the sheriff may proceed to a sale of the remainder to satisfy subsequent incumbrances.

But if any of the defendants' mortgages cover more property than the complainant's mortgage, the decree cannot direct a sale of that part of the premises not covered by the complainant's mortgage.

The decree must not go beyond the relief prayed in the bill, and that is confined to a foreclosure and sale of the premises described in the bill.

Where the decree and execution are against the wife of the mortgagor, and it afterwards proves that her right in the mortgaged premises is not released, a specific performance will not be decreed, although the property was sold subject to all legal prior incumbrances.

The property, under such circumstances, (to entitle the sheriff to a decree against the purchaser for a specific performance,) should be sold with a distinct recognition of the dower right of the wife of the mortgagor.

A decree for specific performance will never be made, unless substantial justice is done thereby, but the parties will be left to their remedies at law.

THE bill was filed by the complainant, to enforce the specific performance of a contract made by the defendant for the purchase of a farm, sold by the complainant as late sheriff of the county of Monmouth, upon an execution issued out of this court. It appears by the bill, that a deed had been tendered by the com-

plainant, which the defendant refused to accept. It also appears that the defendant had paid a part of the consideration money to the complainant, and that after refusing to accept the deed, the defendant had commenced a suit at law against the complainant to recover back the money so paid. The bill prays a decree for specific performance, and also an injunction to restrain the suit at law.

The grounds relied upon in the answer for the dissolution of the injunction, appear in the opinion of the chancellor.

The cause came on for final hearing, upon the pleadings and proofs.

*Vredenburg*, for complainant, cited *Rodman* v. *Zilley, Saxton,* 320; 1 *Fonblanque,* 154.

*J. S. Green*, for defendant, contra, cited 1 *Mad. Chan. Prac.* 284, 286, 320; 6 *John. Chan. R.* 225, as containing the rule by which courts of equity are governed in decreeing a specific performance.

If the vendor, by the day fixed for delivering the deed, does not show a clear title, the purchaser is discharged: 4 *Taunton,* 334.

A purchaser will be discharged from his contract for an error in the decree: *Lechmere* v. *Brazier,* 2 *Jac. and Walker,* 286; *Roffey* v. *Shallcross,* 4 *Maddock's Rep.* 227.

The complainant should show a full performance, or readiness to perform, on his part: 1 *Peters' Rep.* 465; 2 *Green,* 447.

The sheriff's deed was altered after its execution, and thereby made void: 2 *Green,* 178, 583; 12 *Eng. Com. Law,* 129.

The complainant varied his agreement: 1 *Mad. Chan. Prac.* 323; *Saxton,* 320. He was guilty of laches: 1 *Mad. Chan. Prac.* 327, 330.

The premises have been changed and depreciated since the purchase: 1 *Mad. Chan. Prac.* 336.

*I. H. Williamson,* for defendant. The sheriff's deed was defective, in the recital of the execution, and in the description

[Ely v. Perrine.]

of the land. The decree itself is erroneous. The court will not compel a party to take a defective title : 4 *Mad. Rep.* 227, 122 ; 1 *Cond. Eng. Chan. Rep.* 587 ; 2 *Sch. and Lef.* 737.

*Vredenburg*, in reply..

THE CHANCELLOR. The complainant, as sheriff of Monmouth, on the 16th of March, 1840, by virtue of an execution issued out of this court, sold a farm to the defendant at public sale, for eight thousand and five dollars. By the terms of sale, which were in writing, the purchase money was to be paid and the deed delivered, on the 26th of the same month of March, at an hour and place specified ; and these terms were known to the purchaser, for he acknowledges in writing on the back of them, that he was the purchaser, and was to pay the money and take a deed agreeably to said conditions. The purchaser refuses to comply with the terms of sale, declaring himself absolved from all obligation to perform his contract ; and this bill is filed by the sheriff to compel a specific performance. The defendant sets up many reasons why the contract should not be enforced, which I shall consider in their order.

He alleges, first, that the sheriff refused to give him a deed when demanded, and by that act released him from his contract. Upon this part of the case there is considerable evidence, and as it must have, in any result to which I may come, more or less bearing upon the responsibilities of the sheriff, it deserves to be well considered. By the written terms of the sale, and which, as I have stated, the purchaser was fully apprised of, the money was to be paid and the deed delivered on the 26th of March. On that day the sheriff attended with the deed, and the defendant also attended, but declared himself unable to pay all the money, and the sheriff finally received from him one hundred and fifty dollars. The first default was clearly on the part of the defendant, for had he been ready then there can be no doubt the business would have been settled and all further trouble saved. It is stated by the defendant, that he did not expect at the time of the

purchase to pay all the money on the 26th of March, the time specified in the conditions of sale, and that the sheriff's father, who had formerly been sheriff, and was attending as the adviser of his son at the sale, told him that his son would allow him sixty days to pay the purchase money. It does not appear, however, that the sheriff ever authorized his father to make such a declaration, and the father, in his examination, does not pretend that he was so authorized. It was nothing more than a suggestion, unauthorized on his part, that as his son could not be amerced short of sixty days, he would allow the purchaser that time to fulfil his contract. Without showing this extension for the time of payment from the sheriff himself, or made by his authority, and especially as afterwards the purchaser signed a written stipulation to pay the money on that day, the defendant must stand in the position of having made the first default in the fulfilment of this contract. On the 31st of March, the defendant paid the sheriff four thousand dollars more on account of the purchase, and on the 6th of April produced a receipt from one of the parties entitled to about three thousand dollars of the money, that the purchaser had satisfied his demand, and tendered the balance of the purchase money to the sheriff, which he declined receiving, because a notice had been served upon him by Dr. Woodhull, the mortgagor, not to give the purchaser a deed. This notice from the mortgagor, it seems, embarrassed the sheriff, and although well disposed to do his duty, yet desiring to avoid any personal difficulty, he declined at that time giving the purchaser a deed unless he would indemnify him against loss or damage by reason of the notice he had received from the mortgagor. This was an extraordinary demand on a purchaser, that he should, after paying for his purchase, indemnify the sheriff for his act in selling the property. This the defendant very properly declined doing, and had he at that time demanded his deed, declaring that unless then delivered he should decline receiving it afterwards, and persisted in that course, it would have presented a very serious question whether he was not absolved, by the conduct of the sheriff, from all further obligation to perform his con-

tract. But this was not the course pursued by the defendant; for on the 9th of April he went again to the sheriff, and again demanded from him either a deed or the purchase money which he had paid him. They went together to the county town, and there continued chaffering until the sheriff (probably advised by counsel so to do) tendered the deed to the defendant, who then refused to take it, not because it was denied him on the 6th, but because there was a mistake in the description of the property. The sheriff then corrected the mistake in the deed, but as alleged by the defendant, did not reacknowledge it, and the defendant from this time declined receiving any thing but his money. From this time it is manifest, from some cause, the purchaser did not wish to take the title. I cannot suppose the error in the deed to have been the substantial difficulty, or it would have been rectified, but was rather sought by the defendant as an excuse for declining to take the deed. In all the earlier stages of the business, the purchaser wished to have the title, but at this time and afterwards it was manifest, from some cause, his views had changed. Then the parties commenced suits against each other in the supreme court; the sheriff for breach of covenant, and the defendant for his money. Upon these facts, I have come to this conclusion, that while the sheriff was guilty of indiscretion from his fears of the notice he had received from Dr. Woodhull, yet as the defendant made the first default on the 26th of March, which led to all the difficulty, and as the refusal to give the title on the 6th of April, was waived by the course of the defendant on the 9th, in again giving the sheriff his option to give the title if he thought proper, and as he then did tender him the title, there is nothing in the case to absolve the defendant from complying with his contract, unless it be from the defective character of the deed itself. That the deed, if altered, should have been reacknowledged by the grantor, is certain ; but as that is manifestly an omission arising from a mistaken impression on the sheriff's mind that it was unnecessary, I should feel myself authorized, were that the only remaining obstacle, to direct a specific performance upon a new deed being executed in conformity

[Ely v. Perrine.]

to law. On the 13th of July the deed, it would appear, was again tendered to the defendant, and was then reacknowledged.

2. The remaining objections go to the form of the decree, and the important fact that Mrs. Woodhull, the wife of the mortgagor, never acknowledged the mortgage, and is, therefore, not barred of her dower. I do not agree that the decree is defective in the particulars insisted on by the defendant's counsel. The complainant's mortgage covered several tracts of land, and the court required that all the parties in interest having liens upon any portion of that land, should be brought before the court. The decree very properly settles the priorities of the various liens, and directs the whole land to be sold and payment to be made according to the rights of the parties. The complainant's mortgage covered all the land sold, and having all persons in interest in court, I see no other course than to decree the sale of the whole property, and out of the proceeds to pay the several demands against it. The complainant's bill seeks a foreclosure and sale of all the property, and he was required to bring every subsequent mortgagee or judgment creditor into court; and for what purpose? That they may present their claims, and the court, in one suit, and by one decree, direct them to be liquidated out of the property. This is the universal practice of the court, and I can see no other course of proceedure. Suppose, as contended in this case, the sheriff should stop his sale if the complainant's mortgage is satisfied out of the first lot sold, what is to become of the other parties? Who is to pay the costs they have been put to? Such a course would, I think, be productive of great confusion and endless expense. If any of the defendants' mortgages are broader than the complainant's, (cover more property than his,) then, certainly, the decree cannot go beyond a sale of the property contained in the complainant's mortgage. The decree must not go beyond the relief prayed in the bill, and that is confined to a foreclosure and sale of the property described in the complainant's mortgage. The decree is, therefore, as I think, right in this particular, and the sheriff had authority to sell the property in question. But it seems from an inspection of

the record of the decree under which this sale was made, that the mortgage, though signed by Mrs. Woodhull, the mortgagor's wife, was never acknowledged by her; and yet the decree is drawn up in the usual form, against her as well as her husband, as if her rights were extinguished by the decree. This is a difficulty in a most important particular, and is distinctly alleged in the answer as in the way of the complainant's obtaining the relief here asked, and which I have not been able to get over. Can this decree bar the dower right of Mrs. Woodhull? I cannot see how it can. She is not barred by any acknowledgment, and I can see no reason why, in the event of her husband's death, she might not at once demand and recover her dower. This is a defect in the title, discovered, as I suppose, since the sale; for the execution appearing to be against Mrs. Woodhull as well as her husband, it was calculated to deceive a purchaser and to lead him to conclude that her right of dower was barred. Shall I then interpose the extraordinary aid of this court, when a defendant presents me with an objection of this substantial character? He complains that the title is defective. It is true that by the articles of sale the property was set up subject " to all legal prior incumbrances." Yet who could have imagined that the claim of one of the very defendants was not extinguished by the suit? The property should have been sold with a distinct recognition of the dower right of Mrs. Woodhull. Many men would not buy property with such a right unextinguished, and particularly if it be proposed to make any valuable improvements. The cases are not unfrequent where the purchaser has been discharged from an error in the decree, and that on motion : *Lechmere* v. *Brazier*, 2 *Jacobs and Walker*, 286 ; *Roffey* v. *Shallcross*, 4 *Maddock's Rep.* 227 ; and if so, the case is much stronger when set up against the relief asked on a bill for a specific performance. The principle is well settled, that a decree for a specific performance will never be made, unless substantial justice will be advanced thereby. The parties will be left to their remedies at law : *Seymour* v. *Delancey*, 6 *Johns. Chan.* 226 ; *Rodman* v. *Zilley and others*, *Saxton*, 325 ; *Miller* v. *Chet-*

[Ely v. Perrine.]

*wood and others, ante,* 199. Here it is manifest a wrong would be done, and I must decline upon this last ground alone to grant the complainant that aid to which he would otherwise have been entitled.

As the prayer of the bill is denied upon a defect in the title alone, without the laches of the sheriff, I shall order the bill dismissed without costs.

Decree accordingly.

— . .

[The following note is appended to the decree, and though it contains no judicial opinion, is published as embodying the views of the chancellor in regard to the course proper to be pursued by the parties :—]

" This is as far as I am authorized to go judicially, but as this is an amicable suit, and a request was made on the argument that I would settle the whole case and put an end to further controversy, I have no objection to stating informally, that it appears to me to be one of those cases in which exact justice cannot be done to one party without imposing unjust terms upon another, and therefore necessity requires that we should do that which will be nearest accomplishing the great end of justice, that of doing right to all. I think the sheriff should return the money to the purchaser, but without interest unless he has put it to use, and if so then with interest for that time. The suits in the supreme court should be discontinued without costs, and the sheriff advertise and sell the premises over, distinctly and openly declaring at the time of sale that they are sold subject to the right of dower of Mrs. Woodhull."