## Van Syckel and others *vs.* Emery and others.

1. On a motion to dissolve an injunction, the separate answer of a co-defendant, not included in the injunction, cannot be regarded.

2. In a suit to restrain an action at law by reversioners, for waste in cutting timber, a justification of the waste, not alleged or set up in the bill, will be of no avail on a motion to dissolve the injunction. The right to the injunction must appear by the allegations in the bill.

3. Improvements by a life tenant are no excuse or justification for committing waste; more especially when the waste is to the inheritance, and the improvements are to the fertility of the soil, which may be exhausted during the life estate.

4. What constitutes waste is properly a question of law, and the facts which constitute it ought to be passed upon by a jury. A court of equity will not interfere with or restrain a suit for that object.

5. Whether the estate of a reversioner is vested in such manner as to entitle him to sue for waste, and what shall be the rule of damages, are questions proper to be determined in the courts of law.

This cause was argued upon a motion to dissolve the injunction.

*Mr. Bird,* in support of the motion.

*Mr. B. Van Syckel,* contra.

The Chancellor.

The injunction in this case was to restrain six of the nine defendants, from prosecuting a suit brought by them in the Supreme Court. The six so restrained, have answered; the three not restrained, have also answered separately. On this motion, regard can be had only to the answers of the defendants against whom the injunction issued.

George Apgar, of Hunterdon county, died in 1846. By his will, made shortly before his death, he gave to his widow an annuity of sixty dollars during widowhood, and ordered that his daughter Lydia and her husband should furnish her with

board and fire-wood; or, if she choose to go elsewhere, that her board should be paid by his executors out of his estate. And he charged all these matters on his real estate. He also gave his grandson, the defendant, George L. Emery, $1000, to be paid when he became twenty-five years of age, which he also charged upon his real estate. He also gave to his slave, Phillis, an annuity of $24, which he charged on his real estate. He then gave his farm and adjoining wood lot, with all the residue of his estate, to his daughter Lydia, for her life; after her death, to her children when the youngest should attain twenty-one; should any die before that time, without issue, his share to go to the survivors. If Lydia should die before the youngest was twenty-one, her husband, Nicholas Emery, was to have the use and profits of the estate, until that time. Immediately after the last provision, he directs: " I do order and direct my executors to have the farm and buildings kept in good repair, and to see that no unnecessary waste or destruction of timber be committed on my said farm, or wood lot adjoining." He appointed his son-in-law, Nicholas Emery, and his nephew, William Alpaugh, executors. The will was proved by, and probate granted to, Emery. Alpaugh never proved the will nor had letters testamentary.

Nicholas Emery, and his wife, Lydia, took possession of the farm and woodland, and in July, 1855, after the birth of their five children, who are five of the six defendants enjoined in this case, Nicholas sold the wood and timber on forty-five acres of the farm and wood lot, to the complainants, for $1925. The complainants paid him the money, and cut and carried away the timber. In May, 1863, the five children brought suit against the complainants, in the Supreme Court, for the injury to their reversionary interest in the premises by cutting and carrying off the timber. It is to restrain that suit that the injunction issued.

The complainants contend, by their bill and in the argument, that Nicholas Emery, being the executor, was bound to keep the farm in repair, and to pay the charges on the land

and for that purpose had the right to sell wood and timber, the cutting of which might otherwise be waste.

They also contend, that the farm was improved by Nicholas, by fertilizing it, and that by his improvements, its value was increased to a greater amount than the value of the timber sold and cut; and that they are in equity entitled to have this increase accounted for and deducted from the damages, if they are liable to damages. Also, that the timber cut was ripe and decaying, and that the cutting was for the benefit of the estate; and that, at the death of Lydia Emery, the growth of new wood and timber will render the land as valuable as if it had not been cut off.

The bill does not allege that the wood and timber were sold for the purpose of repairs, or paying the charges on the estate; and the answers state that they were not sold for, and that their proceeds were not applied to, those purposes; but that they were sold by Nicholas for his own individual benefit, and the proceeds used by him, for himself.

This makes it unnecessary to discuss the question whether, either with or without the order of the court, he could have sold timber for either of these purposes. That question is not presented by the case before me.

It is clear, that the improvements made by Nicholas upon the farm cannot be deducted by the complainants, or by him, if the suit were against him, from the damages, in this court any more than in a court of law. It is without precedent, and against principle. A life-tenant has no right to pull down a house because he has created a park at greater expense. Besides, the improvements are to the fertility of the soil, a certain advantage to the life-tenant, but at the end of twenty years, for which Lydia or Nicholas may live, or of ten years, before which the youngest child will not be of age, the improvements may be used up and gone.

Whether the cutting of this wood and timber was waste, and whether it was for the advantage of the property or not, are questions which can be much better and more appropriately determined in a court of law, than in this court. What

is waste, is properly a question of law. And the facts which may be held at law to constitute waste, ought to be passed upon and determined by a jury.

Nicholas, by his marital rights, had an estate for the life of his wife, in this property. He had no right to commit waste. If he did commit waste, or injure the inheritance, the persons seized of the reversion have a right to sue for the injury to the reversion, and perhaps for the value of the wood cut, because, when felled, it was their personal property.

Whether the estates of the plaintiffs in the suit at law were contingent, and whether that will defeat their recovery, or lessen the amount of their damages, are proper questions to be determined at law, by the court in which the suit is brought.

The injunction must be dissolved.