THOMAS READY

*v.*

SARAH ANN NOAKES and others.

Specific performance will be decreed of a purchase of lands at public auction made by the owner, where the advertisement and sale have been fairly conducted, although there may be differences of opinion as to the adequacy of the price realized.

Bill for specific performance of a contract for the sale of land. On final hearing on bill and answer of Sarah Ann Noakes, and proofs.

*Mr. J. Garrick,* for complainant.

*Mr. A. K. Brown,* for defendant Noakes.

THE CHANCELLOR.

The complainant files his bill for a decree for specific performance of a contract for the sale of land in Jersey City,

belonging to the defendant Sarah Ann Noakes, and sold to him on the 7th day of June, 1877, at a public auction held by Joseph Warren, auctioneer, who was duly authorized by Mrs. Noakes so to sell the property.   The property is the middle one of three adjoining houses, the lot being of the dimensions of fourteen feet by fifty.   At the sale the complainant was the highest bidder, and the property was struck off to him at $1,250, cash, of which he paid, according to the conditions of sale, ten per cent. at the time of the purchase. He signed an acknowledgment of his purchase in accordance with the conditions, and received from Mr. Warren an acknowledgment, signed by the latter, of the sale to him. The deed, according to the conditions of the sale, was to be delivered on or before the 25th day of June, then next. At that time the complainant duly tendered to Mrs. Noakes and Mr. Warren respectively, the balance of the purchase-money in cash, and demanded the deed for the premises, which was refused by Mrs. Noakes, upon the ground that the price at which the property was sold was far below its true value.   The complainant thereupon filed his bill in this court for relief it the premises.

Mrs. Noakes, by her answer, resists his application on the sole ground of inadequacy of price.   She insists that the property was worth, at the time of the sale, from $2,500 to $3,000, and that it ought to have brought at the sale from $2,000 to $2,600.

Courts of equity seldom interfere to set aside sales and contracts on the ground of inadequacy of price, but leave the parties to their legal remedies.   When they are called upon for extraordinary aid to enforce a contract, they take the liberty to examine into the consideration to be given, its fairness and equality, and all the circumstances connected with it, and if anything manifestly inequitable appears in that part of the transaction, they will not lend their power to carry the contract into execution.   *Rodman* v. *Zilley, Sax.* 320, 324, 325.   But mere difference in value, though it be considerable, is not of itself a sufficient ground for refusing

specific performance. Lord Eldon, in *Emery* v. *Wase*, 8 *Ves.*
517 ; *Babington on Auctions*, 162.

As was said by Lord Eldon, in *White* v. *Damon*, 7 *Ves.* 34,
35, and in *Coles* v. *Trecothick*, 9 *Ves.* 234, 236 : "Specific per-
formance is matter of discretion ; but it is not an arbitrary,
capricious discretion. It must be regulated upon grounds
that will make it judicial. Unless the inadequacy of price
is such as shocks the conscience, and amounts in itself to
conclusive and decisive evidence of fraud in the transaction,
it is not itself a sufficient ground for refusing a decree of
specific performance." Or, as was said by Chief Justice
Marshall, in *Garnett* v. *Macon*, 2 *Brock.* 185, 246 : "It is
settled that mere inadequacy of price is not a sufficient
ground for a court of equity to refuse its assistance, unless
the difference between the sum to be given, and the value of
the land be so enormous as to countenance the idea of fraud
and imposition."

A distinction has been properly made between private
sales and sales at public auction, in favor of the latter. In
*White* v. *Damon*, *ubi supra*, Lord Eldon said that he was
inclined to say that a sale by auction, where no fraud · or
surprise, &c. was shown, could not be set aside for mere
inadequacy of price ; and in *ex parte Latham*, he subsequently
expressed the same opinion.

Vice-Chancellor Wigram lays down the reasonable rule
upon the whole subject in *Borell* v. *Dann*, 2 *Hare* 440, 450,
451. He says: "I certainly understand the rule of the court
to be that, even in ordinary cases, and, *a fortiori*, in cases of
sales by public auction, mere inadequacy of consideration is
not a ground even for refusing a decree for specific perform-
ance of an unexecuted contract; and still less can it be a
ground for rescinding an executed contract. The only
exception which I believe can be stated is, where the inade-
quacy of consideration is so gross as of itself to prove fraud
or imposition on the part of the purchaser. Fraud in the
purchaser is of the essence of the objection to the contract
in such a case. The case must, however, be strong indeed,

in which a court of justice shall say that a purchaser at public auction, between whom and the vendor there has been no previous communication affecting the fairness of the sale, is chargeable with fraud or imposition, only because his bidding did not greatly exceed the amount of the vendor's reserved bidding."

The property in question in this suit is described by one of the witnesses as being a three-story basement brick house, about fourteen feet in front by about thirty feet in depth, the lot being of the width of fourteen feet front by about fifty feet in depth; the house in bad order, cracked, and apparently having settled; the rear wall having bulged out and being sustained by a brace or anchor, and the window blinds on the front of the house being in bad condition, the greater part of the slats being broken out. Another witness, a person who was present at the sale with a view to purchasing the property, says that the house was in a very bad condition at that time; that it appeared to have been occupied by several families; that it had apparently been built for occupation by but one family, but had been altered so as to accommodate a family on each floor. He also says, that it was in a filthy condition; and adds that it, in fact, was a property that he wanted nothing to do with.

The sale was, in all respects, fair. It was open and public, and was attended by a large number of persons; some of the witnesses state that the number was about fifty. It appears from the testimony that several persons bid upon the property. The bidding commenced at $600, and ran up to $1,250, the price at which it was struck off to the complainant. The sale was extensively advertised. Mr. Warren, who testifies on the subject, says it was as well advertised as it would have been if the property had been of the value of $25,000, and it appears, from his testimony on the subject, that it was indeed thoroughly advertised. Mrs. Noakes has produced five witnesses to testify as to the value of the property and the price which it ought to have brought at the sale. The first of these, Mr. Kingsland, says that the prop-

erty was worth at the time of the sale $2,200, and that it ought to have brought that sum at a fair auction sale. Mr. Van Syckle testifies that the property was then worth, in his opinion, $3,000, and it ought to bring that sum at a fair sale in ordinary times, and that at the time of the sale it should have brought at a fair sale, from $2,000 to $2,500. Mr. Knapp says, that in his opinion, the property ought to have brought at a fair sale, at the time when it was sold, $2,500 at public auction. Philip Botzong says, he was willing to pay $2,000 in cash for the property, and would have bought it for an investment at that price, that it ought to have brought at a fair sale at auction, at the time when it was sold, at least $2,500, and that, had he been present, he would have bid it up to $2,000. Mr. Shafer is of opinion, that the property was worth $2,600 at auction, at the time when it was sold; and adds, that he should consider $1,200 an inadequate price for it.

It will be perceived that all of these witnesses declare it to be their opinion that the property should have brought, at a fair auction sale at the time when it was sold, from $2,000 to $2,600. The fact, however, is established by the proof, that the sale was a fair, well-attended auction sale; and it appears by the testimony of Mr. Warren, that he caused to be put up two hundred or two hundred and fifty large bills of the sale throughout the city; distributed from one thousand to two thousand small hand-bills, advertising the sale through the streets, and put a notice of the sale in the two Jersey City newspapers, and that the large bills were set up a week or ten days before the sale. In the light of these facts, these opinions would be an unsafe guide. On the other hand, three witnesses were produced by the complainant, who testify on this subject of the value of the property. One of them, Mr. Hardy appears to be well qualified, from his knowledge of the property, to speak as to its value. He says that, from his knowledge of the property, he should judge that it was worth from $1,500 to $1,800; that for his part he would not give $1,500 for it. He thinks that the

property at $1,250, was cheap, but not a great bargain; that it would cost a great deal of money to put the house in order, and he thinks that at an auction sale properly advertised, the property would bring from $1,200 to $1,500, in these depressed times. He further says that, in his opinion, at an auction sale property advertised, in June, 1877, it ought to have brought from $1,200 to $1,800.

Mr. Gibson, who also appears to be qualified to speak as to the value of the property, says that it is a property and location not at all desirable for purposes of residence; that if it was properly advertised, the property might bring about $1,500; and that he should consider $1,250 a fair price for it when sold at auction, considering the times and the location of the property; and he adds that at that price it would be no extraordinary bargain for the buyer, as it would cost, in his judgment, from $500 to $600 to put the property in fair order to live in, and that it would cost nearly that amount to put the outside in order.

Mr. Smith testifies that he should not think that the property was worth over $1,500 or $1,600; that he does not think it would bring that sum at a sale, for the reason that it is on a very undesirable street, with no prospect of improvement, and that there must be a great deal of money spent on the house to keep it from getting into a much worse condition than it is now in, and that his impression is that the property would not bring $1,500 at an auction sale properly advertised.

Mr. Carscallen was present at the sale, and attended with a view to purchasing the property. He says that after he went through the house he thought it was a kind of investment which he did not care about making; that at the price at which it was sold, the property is cheap enough to a person who desires such a property; but that it is not cheap enough for him, and that he would not take it at this time, in the same condition in which it then was, at that price, though he does not think that the lot could be bought and the house built upon it for that price. He adds that the

house was in a very bad condition at the time, and the condition of the house and the class of tenants to which it must be let, caused him to think that he did not desire that sort of property. He further says, that though he would not purchase the property at the price at which it was sold to the complainant, yet, if he owned it, and was not compelled to sell it, he would not sell it at that price. He says that he could not say that the property was sacrificed; that he would not call it a slaughter of the property, and adds that his action on the day of the sale corresponded with his views, for he would not buy the property.

Mrs. Noakes testifies that when she put the property into the hands of Mr. Warren, for sale at auction, she asked him if he thought it would bring $2,000 over the mortgage of $600 which was upon it, and that he replied that he thought it would bring that sum and more. She further says, that she told him to sell it for that sum, or that she told him to sell it for "what it would bring about that amount." It appears that she was present at the sale; that she sat at the window of the house and heard the bidding. One of the witnesses, Mrs. Inger, says that she had a conversation with her there about the property, before it was struck off; that she told Mrs. Noakes to withdraw it; that the latter said, "No"; that she had placed no price upon it, but had told Mr. Warren to sell it for what it would bring; that immediately after the sale one of Mrs. Noakes's daughters asked her mother what would be left, and that Mrs. Noakes answered $650. This witness testifies also, that after the sale Mrs. Noakes went to Mr. Warren's office, and that when she came back, she told the witness that she had been there to see if the place had been sold for $1,300; that the witness then told her that it was sold for $1,250; that Mrs. Noakes said that she would have to wait until the 26th (which was the day after the time fixed for the delivery of the deed by the conditions of the sale) for her money. The witness adds, that Mrs. Noakes told her that she went to Mr. Warren for her money.

It appears by the testimony of Mr. Warren, that immediately after the sale Mrs. Noakes came to his office, as the last witness said; that she made no objection to the price, except that she thought the property had brought $100 more than the price at which it was sold. He says he, himself, thought it had been struck off for $1,350, and had entered that sum in the conditions of sale, but the purchaser and others satisfied him that it brought only $1,250, and recollecting distinctly himself that that was the sum at which it was struck off, he altered the price on the conditions of sale accordingly. It appears from the testimony of Mrs. Noakes, herself, that she went to see Mr. Warren immediately after the sale, and, although she says she told him she thought the property would bring a great deal more than $1,250, and that he had led her to believe so, the real question between her and him on that occasion was, as to whether the property had been struck off for $1,350 or $1,250.

By the case as presented by the pleadings and the proofs, the complainant is entitled to a decree for specific performance.