WINFIELD S. ASHBY, by next friend, complainant-respondent,

*v.*

FREDERICK P. YETTER, defendant-appellant.

[Submitted July 10th, 1911.   Decided November 20th, 1911.]

1. Complainant, while suffering from nervous prostration and incompetent to manage his business affairs, was induced by misrepresentations of defendant to convey real estate and personal property to him for a grossly inadequate consideration.—*Held*, that such conveyance was procured by fraud and was properly set aside.

2. Under the circumstances of this case, complainant's right to a reconveyance and accounting *held* not barred by laches.

On appeal from a decree advised by Vice-Chancellor Walker, who filed the following opinion:

The bill was filed by Winfield S. Ashby, who alleged that during January, 1902, he was the owner of certain real estate and personal property at Atlantic City, New Jersey; that during that month he became broken in health and a sufferer from nervous prostration and melancholia, and became mentally infirm and unable to grasp business situations, and was thereafter for a long space of time mentally and physically incapacitated and totally unfit to look after his property and business; that in this situation the defendant, Yetter, requested the complainant to convey to him his real and personal property in Atlantic City, representing that he would take charge of the same and conduct and manage it for the complainant and account to him for the proceeds of the property.   The bill was filed March 6th, 1907. Thereafter Ashby became insane, and on September 30th, 1907, an order was made appointing Jessie B. Ashby, the complainant's wife, as his next friend, to prosecute the suit.   Ashby, himself, being insane, was not a witness.

Mrs. Ashby testified that Yetter came to the house several times

to see her husband and she was present at one conversation in which Yetter told her that he realized that her husband was a sick man and not able to take care of his affairs, and he (Yetter) was trying to persuade him to turn them over to him so that he could look out for them until such time as he (Mr. Ashby) would be able to take them up again.

The result of negotiations between Ashby and Yetter were that Ashby conveyed all his Atlantic City property to Yetter by three deeds for the real estate, and a bill of sale for the personal property, March 18th, 1902. It is significant that each deed recites a consideration of one dollar, and the bill of sale, one dollar and other valuable consideration. On the same day Yetter conveyed to Ashby three certain building lots on the outskirts of Philadelphia, the consideration being expressed to be one dollar and other good and valuable consideration. The equities in the real estate conveyed by Ashby to Yetter amounted, approximately, to $10,000, and the personal property to approximately $2,400, making in all, approximately, $12,400, which Yetter took over into his possession and control. The lots conveyed by Yetter were worth something between $500 and $900, the latter figures at the very outside. Ashby became decidedly aberrated after the transaction, and Yetter knew it, and this, to my mind, explains how it was that Yetter wrote Mrs. Ashby on July 8th, 1902, nearly four months after he had taken title, for permission to ship certain of the personal property he had become possessed of from Mr. Ashby, to a Mr. McCarroll. This, to my mind, is inconsistent with Yetter's present claim of ownership in himself of the property acquired through the Ashby conveyances, and his, Yetter's, attempted explanation only confirms that belief.

The defendant lays stress upon a memorandum written and signed by Mr. Ashby on March 8th, 1902, twenty days before the deeds passed, in which Mr. Ashby says he that day sold to Mr. Yetter all his interests in Atlantic City. The explanation is that the note was an authority to Yetter to go to Atlantic City and take charge of Ashby's business in advance of the conveyances, and is entirely consistent with the complainant's claim that the transfer of property was in trust. Besides the probabilities of the case being entirely with the complainant, Yetter's appear-

ance on the witness stand and manner of testifying were decidedly against him.

The conveyances being entirely regular and valid on their face, import legality and the burden is upon the complainant to overcome that presumption. To my mind the complainant has discharged the burden of proof. I hold in this case that the testimony does not warrant a finding that the complainant was *non compos mentis* at the time he made and consummated the transaction, but it shows that he was suffering from a severe mental disorder and that his unfortunate condition and the mental weakness resulting from it was the moving cause of his putting his property in the hands of Yetter to manage for him. I am persuaded that the conveyance by Yetter to Ashby was by way of security for the faithful performance of the trust he assumed and was not a consideration for the conveyance to him by Ashby of his property.

A decree for a reconveyance and accounting will be made in accordance with the prayer of the complainant's bill.

*Messrs. Wescott & Wescott,* for the appellant.

*Messrs. Garrison & Voorhees,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

We reach the same result as that to which the learned vice-chancellor was led by his consideration of the evidence, but for reasons not wholly identical with those expressed by him. There is some difficulty in resting the decree for reconveyance on the terms of an express trust, because that trust was not evidenced by any writing as required by the third section of the statute of frauds. *McVay* v. *McVay, 43 N. J. Eq. (16 Stew.) 47; Newkirk* v. *Place, 47 N. J. Eq. (2 Dick.) 477; Aller* v. *Crouter, 64 N. J. Eq. (19 Dick.) 381, 391; Coffey* v. *Sullivan, 63 N. J. Eq. (18 Dick.) 296.* The theory of a resulting trust arising from non-payment of consideration was not relied on, and would have been untenable. *Hogan* v. *Jaques, 19 N. J. Eq. (4 C. E. Gr.)*

*123; Coffey* v. *Sullivan, supra.* It may be that as there was no objection to the parol evidence tending to show an express trust, and that evidence, if properly to be considered, was adequate to support such a finding, the decree may be upheld on this ground, though in *Coffey* v. *Sullivan* this court intimated that the trust itself would be invalidated, and not merely the parol evidence to establish it. *63 N. J. Eq. (18 Dick.) 304.*

We need not go further into this branch of the cause because we are satisfied on a reading of the evidence that the conveyances from Ashby to Yetter were procured by fraud, and that that procurement was facilitated by Ashby's mental condition at the time. He was a nervous wreck with his mentality impaired; he had been in the insane asylum some years before, and shortly after the bill was filed went there again. Defendant, a shrewd and apparently a somewhat unprincipled real estate speculator, seeing Ashby's condition, took advantage of it, and to increase his anxiety and worry and thus induce him to get rid of his property, told him that there were judgments against him, that he could not show himself in Atlantic City, and that the mortgages were being foreclosed, or about to be foreclosed.

The grossly inadequate consideration is of itself evidence of fraud. *Worth* v. *Watts, 76 N. J. Eq. (6 Buch.) 299, 305.* Superadding the misrepresentations of fact we have no difficulty in finding that the deeds and bill of sale were fraudulently procured, and should be set aside.

The effect of the fraudulent procurement was to create a trust *ex maleficio* in favor of complainant. *Pom. Eq. Jur.* § *1053 et seq.* Reconveyance and accounting are of course incidental to such a trust, and hence were properly decreed.

The defence of laches is made but is without merit. It is true that five years elapsed before the filing of the bill. But during all that time Ashby's mental incapacity persisted, finally culminating in insanity; and for a great part of it Yetter's behavior was such as to justify complainant's wife in the belief that Yetter was dealing with the property as a trustee. With the husband mentally incompetent and the wife deceived as to the defendant's position in the matter, laches may well be excused, especially as Yetter's position has not yet been changed in any

respect that cannot be fully compensated for on the accounting, and by a reconveyance of the Philadelphia lots.

The decree of the court of chancery will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—12.

*For reversal*—None.