OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### MARCH TERM, 1917.

---

THE FIRST NATIONAL BANK OF HOUTZDALE, PENNSYLVANIA, appellant,

*v.*

. THOMAS B. PARKER et al., respondents.

[Argued March 8th, 1917. Decided June 18th, 1917.]

A court of equity, when its remedial jurisdiction is invoked in aid of or in lieu of an action at law, will examine not only the transaction in question, but the relations of the parties and all of the surrounding circumstances, to the end that if there is a well-grounded suspicion of fraud or deception it may withhold its aid and leave the complainant to his legal remedy.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming.

*Mr. John D. McMullin,* for the appellant.

*Mr. George J. Bergen,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

The bill of complaint is exhibited to collect a judgment at law out of a fund placed in trust for his own use by the judgment debtor. Such a bill will lie to prevent a fraud upon *bona fide* creditors. *Stat. Frauds* § *11; Chancery act* § *70.*

Upon three previous occasions similar bills were filed by the same complainant, who in each case obtained the relief prayed for. Upon the filing of this fourth bill the vice-chancellor who heard the cause and who had made the previous decrees became convinced that the statutes of this state were being used not to protect a *bona fide* creditor of the settler of the trust, but to unable such settler to do what he could not lawfully do, viz., to regain the *corpus* of the trust fund. Some of the reasons that led the vice-chancellor to this conclusion were stated by him to counsel upon the argument as follows: "When on three successive occasions, namely, in 1910, 1912 and 1914, Mr. Parker has borrowed on the dates named, respectively, ten thousand, twelve thousand and thirteen thousand dollars in the same manner, and on each occasion the bank has been obliged to resort for the collection of the loans to the same method now pursued, namely, a judgment in New Jersey, personal service upon Mr. Parker out of his own state, in the New Jersey law suit—service which it is reasonably apparent is made possible by Mr. Parker for the convenience of the bank—then a bill in equity in New Jersey identical with the present bill with personal service on Mr. Parker procured in the same way, is not the bank chargeable with knowledge of circumstances that make it impossible to escape the conclusion that when they make the fourth loan in the same manner they are simply making themselves the instrument for Mr. Parker to accomplish indirectly what he cannot accomplish directly?"

The fact that these remarks were made to counsel while the

trial was still in progress has a marked significance upon the *bona fides* of the complainant. Such a statement by the court while the case was still open afforded an opportunity, if it did not amount to an invitation, to the complainant to offer proof of any facts that would tend to rebut the impression the vice-chancellor had formed as to the collusive character of the suit. That no such proof was offered is practically tantamount to an admission that no such facts existed.

The vice-chancellor had, moreover, the advantages of the familiarity with the case gathered in previous litigations, and of the presence before him of the witnesses. Without these advantages we are in danger of dealing with the case upon more legal abstractions, whereas he dealt with it as the practical application of an equitable remedy to the given case.

In his final conclusions the vice-chancellor, referring to the previous litigation, said: "In that litigation complainants became fully apprised of the fact that the trust was void only as to *bona fide* creditors of Parker's, and that Parker could not in his own behalf recover from the trust company the principal of the trust funds. The three subsequent loans made by complainant to Parker, and the proceedings taken in each instance by complainant for recovery from the trust company of the money so loaned, render it impossible to escape the conclusion that in making the loan here in question complainant deliberately and knowingly constituted itself an agency to enable Parker to regain control of his property. The circumstances that complainant actually advanced money and sought to make a profit for itself is immaterial; the practical status which complainant has deliberately assumed is that of a permanent conduit between Parker and the trust company from which Parker may draw funds at pleasure; complainant has constituted itself a creditor for the sole and definite purpose of appropriating to itself the superior benefits of that status, creditors' rights which appeal to equitable protection are of an inherently different quality. * * * I am fully convinced that this court cannot be properly made the involuntary machinery for carrying out an arrangement of that nature for the ultimate benefit of Parker."

We fully concur in the conclusions thus reached by the learned

vice-chancellor, and in the consequent dismissal of the complainants' bill which may well be rested upon a well-grounded suspicion that a collusive deception was being systematically practiced upon the court of equity in order to obtain for one purpose the extraordinary aid it accords only for a totally different purpose.

A positive demonstration of actual fraud is not necessary. In the well-considered opinion in the case of *Watts* v. *Worth, 76 N. J. Eq. 299,* Mr. Justice Parker points out that when parties having a right of action at law seek the aid of a court of equity, such court will examine not only the transaction in question, but the relations of the parties and all of the surrounding circumstances, to the end that if "an atmosphere of suspicion surrounds and permeates the whole case," a court of equity will refuse its extraordinary relief and leave the complainant to his legal remedy. That is this case.

The circumstance that in the case just cited the same vice-chancellor sat below gives concrete emphasis to the fact that *"stare decisis"* is only a more technical term for judicial consistency.

The decree of the court of chancery is affirmed.


SWAYZE, J. (dissenting).

The trust in this case was created by Parker himself. As soon as he attained his majority he assigned securities amounting to more than $150,000 to his mother and she immediately assigned them to the Camden Safe Deposit and Trust Company. The declaration of trust provides that the income shall be paid to Parker during his life for his sole and separate use so that the same shall not be liable to or for his debts and contracts or for debts or contracts or under the control of any other person; immediately after his death the property is to be assigned to such person and for such uses as he shall by will appoint in default of a will to his mother if living, freed and discharged of the trust; but if she die before Parker, then to such person as she may by will appoint; and in default thereof to such persons as would be entitled under the laws of Pennsylvania to the estate of Parker. A right is reserved to Parker with the consent of his

mother, if living, to revoke the trust; and to Parker alone to revoke it after his mother's death. She died in 1901. The trust was made irrevocable just before her death by consent of her and Parker. The deed of trust is clearly void as to creditors under section 11 of the statute of frauds (*Comp. Stat. p. 2617*), because made in trust for the use of the person making the same, and also because on its face it shows an intent to defraud future creditors. The case comes also within section 70 of the Chancery act, subjecting to the rights of creditors moneys held in trust where the trust has been created by the judgment debtor himself. It does not come within the rule of *Ruckman* v. *Conover* and *Winans* v. *Groves,* to which the vice-chancellor appeals. In those cases the rights of third parties were involved. So much the court now concedes. No one is interested in the fund except Parker himself. No one opposes the complainant's recovery of its money except the trust company which has no beneficial interest in the fund, except possibly commissions to be earned. Parker has apparently done all he could to secure the complainant its money, except to make a binding agreement to execute his power of appointment in favor of his creditor which he can do if it be necessary. The question, therefore, resolves itself into whether he is to be prevented, in spite of himself, from securing payment of his debts by a judgment, execution and proceedings in chancery supplementary thereto. The case goes further than to protect the *corpus* of the fund. The bill is dismissed and the complainant is thereby deprived of its remedy even against the income of the fund which is clearly Parker's absolute property, and is probably in excess of the $4,000 mentioned in the statute. *Comp. Stat. p. 2259 § 300; P. L. 1880 p. 274.*

We have not heretofore adopted in this state the doctrine of "spendthrift trusts," and our legislature has evinced hostility to them by subjecting income in excess of $4,000 to supplementary proceedings at law, even where the trust is created by another. We are now by this decision going far beyond any doctrine of spendthrift trusts that has ever come under my notice. And we are doing it without any evidence that Mr. Parker needs the protection of the court as he certainly does not ask for it.

We do it because, without proof, we guess that a man who borrows about $10,000 a year and chooses to pay it out of a fund of which the equitable and beneficial right is wholly his own, by means of judgment and execution, must be doing wrong and without evidence we attribute moral delinquency to a creditor who loans him the money at the legal rate and in the ordinary course of business. There is no evidence as to Parker's other means or his fortune aside from the trust fund; there is no evidence as to his need of the money or the use he made of it. It may have been used for a highly profitable investment; it may have been used to discharge debts incurred by him of the highest moral obligation. In effect, we say the bank was right in loaning him $35,000 in four years; the court of chancery enforced its right to recover out of this fund three different times; we now say that for it to loan him $13,000 in the fifth year and to attempt to recover it by the thrice approved method, shows that it is guilty of some moral delinquency; that its hands are unclean because it is assisting him to get control of his own property in which no one else has any beneficial interest and to discharge that property of a trust created by himself and pronounced void by statute. If the court is correct, tradesmen who supply him with the means of living, must be likewise guilty of moral delinquency if they supply him for a fifth year after having enforced their claim for four years out of this fund. This must be so since, as far as the case shows, the money loaned by the bank may have been loaned for the express purpose of meeting Parker's legitimate living expenses, which may not have been extravagant for one of his means. I cannot understand on what legal principle the bank can have imposed upon it the duty to explain what becomes of the money it loans. The legislature has recently shown a desire to go to great lengths to assist creditors in recovering their debts; a workingman's wages "due and owing or thereafter to become due and owing" may be sequestered. *P. L. 1915 pp. 182, 470.* We are protecting an income on a trust fund in excess of $100,000 created by the debtor himself and expressly declared by him alone not to be "liable to or for his debts and contracts." The way is made easy for a man of fortune to escape the ordinary obligation to pay his debts, in

spite of legislation to compel him to pay. I confess I cannot follow the court's reasoning. I pass over the question that might well be raised as to the estate in the trust fund of a life tenant with an absolute power of disposition by will.

*For affirmance*—GARRISON, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—11.

*For reversal*—SWAYZE—1.