WILLIAM A. BARTLEY

*v.*

J. WILSON LINDABURY.

[Decided June 13th, 1918.]

1. Where the enforcement of a contract for sale of land would be harsh and oppressive on one of the parties thereto, its specific performance will not be decreed, but the parties will be left to their remedy at law.

2. Under the evidence in this case, *held* that to enforce the contract in question by decree of specific performance would as a matter of judicial discretion be harsh and oppressive, and the bill is therefore dismissed.

On bill, &c.

*Mr. Elmer King,* for the complainant.

*Mr. Nathaniel C. Toms* and *Mr. Charles A. Rathbun,* for the defendant.

STEVENS, V. C.

The bill is filed to enforce the specific performance of the following agreement:

"This agreement made and entered into this 19th day of January, 1916, between Wm. A. Bartley of Bartley, N. J., party of the first part, and J. Wilson Lindabury of Mt. Olive, N. J., party of the second part.

"Party of the first part agrees to sell to party of the second part $9,900.00 of the stock held by him in the corporation of Wm. Bartley & Sons, in consideration of which the party of the second part does hereby pay unto the party of the first part the sum of $5.00 as a binder to this agreement, the receipt of which amount the party of the first part hereby acknowledges. The balance to be paid as follows: $1,000.00 on or before January 24, 1916, and the remaining $4,900.00 of the cash payment to be paid on or before April 1, 1916. The remaining $4,000.00 to be paid by the transfer of a guaranteed deed for the farm owned and occupied by the party of the second part, consisting of 115 acres and

buildings situated thereon, located in the township of Mt. Olive, County of Morris, State of New Jersey, said deed to be transferred on or before April 1, 1916.

"It is further mutually understood and agreed that in the event that the farm is sold for more than $4,000.00 the party of the second part is to receive one-half of the increased price over and above the commission paid for selling.

"In Witness Whereof the parties hereto have this day and year set their hands and seals first above written.

"Witness MRS. JENNIE L. LINDABURY.          WM. A. BARTLEY.

"Witness MRS. JENNIE L. LINDABURY.          J. WILSON LINDABURY."

The complainant was, at the time the agreement was made, a stockholder of Wm. Bartley & Sons, a corporation doing business in the village of Bartley, whose capital stock was $24,000. Of this complainant owned one hundred and one shares. The defendant was a farmer. His family lived opposite the factory and his farm was in Mt. Olive, two miles distant.

The complainant had had some difference with the other factory owners and wanted to sell his stock. A week or ten days before the agreement was executed, he went to Mt. Olive and asked defendant to buy it. He spoke of the company's condition and suggested that he (defendant) talk with the company's officers, which he did. The agreement was drawn by complainant himself and was executed in defendant's house in the presence of his wife. After signing, the defendant sought to borrow money on the stock to enable him to pay the $5,900, which the agreement called for. He could not get it, and within twenty-four hours notified complainant over the telephone that the agreement was off. In May following, the machine shop was partially destroyed by fire, and the insurance being inadequate, there was a net loss estimated at from eight to ten thousand dollars. At the time the agreement was made the stock seems to have been worth about par.

There is no merit in the defendant's contention that the agreement was nothing but an option. One has only to read it to see that it was, in form, at least, a contract binding on both sides. And there is no proof of fraudulent representation. Furthermore, the defendant's contention, that he is not bound by the contract, for the reason that the statement in writing

called for by the supplement to the Corporations act (*P. L. 1913 p. 28*) was not filed at the time the stock was issued, is untenable. The act does not say *when* the directors are to file the statement which it prescribes. While its language is a little ambiguous, it is apparent that what is called for is a statement of the completed transaction. The company if it purchase property must pay "what the same is reasonably worth in money, at a fair, *bona fide* valuation," and may "issue therefor stock to the amount of the value thereof in payment." After this is done the directors are to make and file a true statement of the transaction. This was done in the present case, but not until after suit brought. Whether or not it should have been done before, I find nothing in the terms of the act which would invalidate complainant's stock and make it unmarketable.

I come now to the only defence which seems to me to possess any merit, and that is that the court ought not to enforce the equitable remedy of specific performance because it would be harsh and oppressive. With considerable hesitation, I have adopted this view.

In his work on *Equity Jurisprudence,* volume 3 (1st ed.) in the foot-note on page 449, Pomeroy says:

"Oppression or hardship may result from unconscionable provisions of the contract itself, or it may result from the situation of the parties, unconnected with the terms of the contract or with the circumstance of its negotiation and execution—that is from external facts or events or circumstances which control or affect the situation of the defendant."

To the same effect is *Crane* v. *DeCamp, 21 N. J. Eq. 414.*

Looking, first, at the external circumstances, it appears that defendant—a farmer—was unfamiliar with business methods. Had he been otherwise, he would have applied for a loan *before* signing the contract. It also appears that the fire loss must have considerably diminished the value of the stock. While a vendee ordinarily takes the risk of depreciation, it is still true that the defendant is here placed in a position of peculiar hardship. He agreed to give for the stock, not only $5,900 in cash, but also his farm—his only means of livelihood. The result of decreeing per-

formance would probably be this: He would be deprived of his farm, and would be decreed to pay $5,900 in money. Failing to pay, the stock decreed to be transferred would be subject to levy and sale. In its depreciated condition it is more than likely that there would be but little demand for it, and that, bidders failing, complainant would buy it in and so become the owner of both farm and stock.

Looking at the agreement itself, it is not entirely clear what is meant by the stipulation "party of the first part agrees to sell to party of the second part $9,900 of the stock held by him in the corporation." Does it call for stock whose par value is $9,900, or does it call for as many shares as would, taken at their market value, make up that amount? The agreement calls for a "guaranteed" deed. Does it mean a deed containing covenants of seizin, quiet enjoyment and warranty, or does it mean a deed for land, title to which is guaranteed by a title or trust company? Complainant's bill prays for a warranty deed. These obscurities might not, of themselves, prevent specific performance, but there is another provision which seems to me to be oppressive, particularly in view of what has happened. That provision is "that in the event that the farm is sold for more than $4,000, the party of the second part [defendant] is to receive one-half of the increased price over and above the commission paid for selling." The agreement, drawn by complainant himself, does not compel him to sell. He may retain indefinitely. The undisputed evidence is that the farm is worth $7,000. For this, and the cash payment of $5,900, the defendant is to receive stock, whose market value did not exceed, and may not have equaled $9,900, at the time of the making of the agreement, and which is now, unquestionably, worth less. The clause in question was not the subject of discussion and is plainly one-sided.

The law is well settled that courts of equity will often refuse to enforce the specific performance of an agreement that they would not, on the evidence, set aside. *Woollam* v. *Hearn 2 Lead. Cas. 695 (3d Am. ed.)*; *Stoutenburgh* v. *Tompkins, 9 N. J. Eq. 332; Bowker* v. *Cunningham, 73 N. J. Eq. 458.* There is no rule more clearly established, says Chancellor Zabris-

kie in *Crane* v. *De Camp, 21 N. J. Eq. 418,* than "that upon an application for a specific performance of a contract, the court must be satisfied that the claim is fair, reasonable and just, and the contract equal in all its parts. If these points are not established by complainant he will be left to his remedy at law."

It seems to me that as a matter of judicial discretion, looking at all the circumstances, to decree specific performance would be harsh and oppressive within the meaning of the cases, and that the equities of the case would be better subserved by leaving the parties to their legal remedy of damages.