19 N.J. Super. 12 (1952)
87 A.2d 770
JOHN PANCO AND MARY PANCO, HIS WIFE, PLAINTIFFS,
v.
JAMES GEORGE ROGERS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 20, 1952.
*14 Mr. William C. Gotshalk, attorney for the plaintiffs.
Mr. Joseph Pierce Lodge, attorney for the defendant.
HANEMAN, J.S.C.
The plaintiffs herein seek the rescission of a written agreement to sell real estate, upon the ground of mutual mistake. The defendant seeks specific performance of said agreement, by way of counterclaim. The alleged mistake lies in the consideration to be paid for the conveyance of the realty, plaintiffs alleging that it should *15 have been $12,500 and defendant alleging it should have been $5,500, as expressed in said agreement.
I find the following facts in connection herewith:
John Panco, a man of some 77 years of age, had been the owner of the realty here involved since 1913, the purchase of which was his only transaction involving real estate until that now under consideration. Being a carpenter by trade, he had, by his own efforts, constructed the home there situated. He had had very little formal schooling and was, at the time of the execution of the agreement, quite deaf.
In the fore part of the year 1951 the plaintiffs had decided to sell the premises here involved and to move to Florida. In furtherance of such a plan, with the aid of their daughter, Alice Panco, they prepared an advertisement which was inserted in the Philadelphia Inquirer, and placed a sign in the window of the house, advertising said property for sale. In response to these advertisements, several prospective purchasers arrived at the premises, but none accepted at the asking price of $12,500. The defendant, who lived in the neighborhood, came to the property on or about May 15, 1951. He was escorted through the property by the plaintiff Mary Panco, in the absence of her husband, John Panco. Mary Panco is apparently of foreign extraction and speaks with an accent. Upon inquiring the price, defendant alleges that he was advised by Mary Panco that it was $5,500. The plaintiff Mary Panco denies the price as so stated, but alleges that the price asked was $12,500. The said defendant brought his intended bride to examine the premises upon the following Thursday. Upon this occasion there was no further discussion of price. On the succeeding Tuesday, May 22, 1951, the defendant, as per arrangements made the preceding night, took John Panco to his, defendant's, attorney, where the agreement was prepared. The plaintiff, John Panco, took very little vocal part in the discussion at the attorney's office.
The attorney who was counsel for the defendant at the time of the making of the contract testified that John Panco *16 responded generally by the monosyllabic "Yes" or "No" or by shaking his head in the affirmative or negative when defendant related the details of the transaction to said counsel and when the latter dictated the agreement. There was some discussion during the preparation of the agreement between defendant and his counsel relating to the obtainance of a mortgage by the defendant, succeeding which said counsel called a building and loan association to make arrangements therefore.
The defendant, after the agreement had been signed by him and John Panco, drove the latter to his home, where the signature of Mary Panco was obtained. That evening, when Alice Panco returned home from work, the plaintiffs for the first time, upon her explanation, understood that the agreement called for a consideration of $5,500. John Panco insisted that the $5,500 related to a part payment on account of the purchase price of $12,500. They immediately contacted a son-in-law of the plaintiffs who, in turn, contacted the defendant. A conference ensued at plaintiffs' residence. Although plaintiffs contend that the defendant agreed to cancel the transaction, the defendant states that he did not definitely agree to do so. The plaintiffs then offered to repay to the defendant not only his deposit, but whatever expenses he had been put to, including attorney's fees. This offer they still make.
The testimony satisfies me that the property here involved is worth considerably in excess of $5,500, and is worth at least $10,000, and that the plaintiffs had established their sale price at $12,500 and believed that they were obtaining $12,500.
Mistake has been defined in Santamaria v. Shell Eastern Petroleum Products, Inc., 116 N.J. Eq. 26 (Ch. 1934), as follows:
"Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. Cummins v. Bulgin, 37 N.J. Eq. 476. It may arise either from unconsciousness, *17 ignorance, forgetfulness, imposition or misplaced confidence. Where it arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake."
I am satisfied that there was a mutual mistake in the parol negotiations, i.e., the defendant conceived that he was purchasing the property for $5,500 and the plaintiffs that they were selling at $12,500. It is understandable that such an error might have arisen when it is noted that Mary Panco, the only person with whom the defendant discussed price before the preparation of the agreement, speaks with an accent.
Insofar as the provisions of the final written agreement are concerned, there was a unilateral mistake, i.e., the defendant knew that the agreement provided for a sales price of $5,500 and the plaintiffs believed that the agreement provided for $12,500.
Normally, rescission cannot be enforced on account of the mistake of one party only, which the other party did not share and where such other party was not guilty of fraud, undue influence, concealment or bad faith and would not derive any unconscionable advantage from the enforcement of the contract. Levine v. Lafayette Building Corp., 103 N.J. Eq. 121 (Ch. 1928), reversed on other grounds, 105 N.J. Eq. 532 (E. & A. 1929); Dencer v. Erb, 142 N.J. Eq. 422 (Ch. 1948).
Rescission may be had on the ground of unilateral mistake under the above circumstances, provided the mistake is not attributable to the negligence of the party seeking such relief. The party seeking relief must be free of that want of care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of a legal duty. Wirsching v. Grand Lodge of F. & A.M. of N.J., 67 N.J. Eq. 711 (E. & A. 1904); Conduit & Foundation Corp. v. City of Atlantic City, 2 N.J. Super. 433 (Ch. Div. 1949); Green v. Stone, 54 *18 N.J. Eq. 387 (E. & A. 1896); Moro v. Pulone, 140 N.J. Eq. 25 (Ch. 1947); DuPont Chemical Co. v. Buckley, 96 N.J. Eq. 465 (Ch. 1924).
There can be no rescission unless the parties can be restored to their original positions. Howell v. Baker, 106 N.J. Eq. 434 (Ch. 1930); Dencer v. Erb, 142 N.J. Eq. 422 (Ch. 1948); Green v. Stone, 54 N.J. Eq. 387 (E. & A. 1896).
To rescind one must act promptly. Failure to rescind promptly is plenary evidence of the party's election not to do so. Levine v. Lafayette Building Corp., 103 N.J. Eq. 121 (Ch. 1928) and 105 N.J. Eq. 532 (E. & A. 1929); Reed v. Benzine-ated Soap Co., 81 N.J. Eq. 182 (E. & A. 1912).
Considering all of the essential elements concerned, I find that although the plaintiffs are free of such negligence as would prevent them from relief, and acted promptly, and that the defendant can be restored to his original position, that there was no actual fraud, undue influence or concealment on the part of the defendant, and hence the plaintiffs may not have a rescission of the contract.
However, insofar as the affirmative relief demanded by the defendant is concerned, the specific performance of the contract, such an application is addressed to the sound discretion of a court of equity, which may grant or deny, as the circumstances of the case warrant. Upon an application for specific performance the court must be satisfied that the claim is fair, reasonable and just, and in judging of its fairness, the court will look not only at the terms of the contract itself, but at all of the surrounding circumstances, including the relations of the parties.
One seeking a specific performance may, upon a proper finding, be relegated to his remedy at law. A decree of specific performance will never be made unless substantial justice is done thereby, but the parties will be left to their remedies at law. Hemhauser v. Hemhauser, 110 N.J. Eq. 77 (Ch. 1932).
*19 Although inadequacy of price is not in and of itself a sufficient ground for refusing specific performance, it may be so gross as to shock the conscience of the court and amount to conclusive and decisive evidence of fraud in the transaction, even in the absence of affirmative proof of fraud or misrepresentation. Actual proof of fraud is, under those circumstances, not necessary. First National Bank of Houtzdale v. Parker, 87 N.J. Eq. 595 (E. & A. 1917); Ready v. Noakes, 29 N.J. Eq. 497 (Ch. 1878); Shaddle v. Disborough, 30 N.J. Eq. 370 (Ch. 1879); Twining v. Neil, 38 N.J. Eq. 470 (Ch. 1884); Worth v. Watts, 74 N.J. Eq. 609 (Ch. 1908), reversed on other grounds, 76 N.J. Eq. 299 (E. & A. 1909); Ashby v. Yetter, 79 N.J. Eq. 196 (E. & A. 1911); Ely v. Perrine, 2 N.J. Eq. 396 (Ch. 1841).
In Worth v. Watts, supra, the court said:
"Any extended review of the adjudicated cases, with a view of ascertaining when the difference between the value and contract price may be said to become so great as to amount to gross inadequacy, and shock the conscience of the court, and in itself operate to deny relief, would, I think, be of little assistance. Most of the authorities touching that subject will be found collected in a footnote to 26 Am. & Eng. Encycl. L. (2d ed.) 28. Any considerable inadequacy of price naturally suggests unfair dealing on the part of the one favored by the terms of the contract, when the engagement is considered, as it must be, as a contract, and not as a gratuity, but it is difficult to conceive any case in which some circumstances may not exist which will operate to either repel or to accentuate such suggestion of unfair dealing. Even in a case where there exists such gross inadequacy of price as may be appropriately said to shock the conscience of the court, and afford in itself satisfactory and convincing evidence of unfair dealing, other circumstances may exist, which, if considered, would tend to destroy the conclusion which might be otherwise reached. Such circumstances should, I think, be given due consideration."
Where the enforcement of a contract for the sale of land would be harsh, oppressive or manifestly unjust to one of the parties thereto, its specific performance will not be decreed, but the parties will be left to their remedy at law. To succeed in a suit for specific performance, the court must be satisfied that the claim is fair, reasonable and equal in all *20 its parts, and to so determine. The court will look not merely at the terms of the agreement but at the relation of the parties and the surrounding circumstances as well. Bartley v. Lindabury, 89 N.J. Eq. 8 (Ch. 1918); Hemhauser v. Hemhauser, 110 N.J. Eq. 77 (Ch. 1932); Williams v. M.E. Blatt Co., 95 N.J. Eq. 326 (E. & A. 1923); Migel v. Bachofen, 96 N.J. Eq. 608 (E. & A. 1924); Harrington v. Heder, 109 N.J. Eq. 528 (E. & A. 1931).
In Crane v. Decamp, 21 N.J. Eq. 414 (E. & A. 1869), the court said, at page 418:
"This is an application addressed to the sound, legal discretion of the court. There is no rule in equity more clearly established, than that upon an application for a specific performance of a contract, the court must be satisfied that the claim is fair, reasonable, and just, and the contract equal in all its parts. If these facts are not established by the complainant he will be left to his remedy at law. Seymour v. Delancy, 3 Cow. 445; Stoutenburgh v. Tompkins, 1 Stockt. 332; Fry on Spec. Perf. [*]106; Talbot v. Ford, 13 Sim. 173.
In judging of the fairness of a contract, the court will look not merely at the terms of the agreement itself, but at the relations of the parties and all the surrounding circumstances. Fry on Spec. Perf., Sec. 239."
See also Knickerbocker, &c., Co. v. Clabby, 94 N.J. Eq. 173 (E. & A. 1922); Hemhauser v. Hemhauser, 110 N.J. Eq. 77 (Ch. 1932).
The contract must be just, equal and agreeable to good conscience, and not a catching bargain. Sullivan v. Jennings, 44 N.J. Eq. 11 (Ch. 1888).
As an example of equity's refusal to grant specific performance, even an unintentional misrepresentation may so result. The basis for such a conclusion is not based upon fraud but it is a determination that under the circumstances of the case it is not in furtherance of substantial justice to extend the extraordinary powers of the court to the one seeking relief. Bowker v. Cunningham, 78 N.J. Eq. 458 (Ch. 1911).
The question is not what must the court do, but what should it do, in view of the circumstances, to further justice. Warner v. Giron, 141 N.J. Eq. 493 (Ch. 1948).
*21 Therefore, taking into consideration all of the elements of this case, including the age, lack of education and deafness of John Panco, the foreign extraction of his wife, the original mistake as to the consideration, the manner in which the contract was prepared, and the attendant circumstances, the price, which I find inadequate, and as well the fact that a refusal to direct specific performance will result in no damage to defendant except the loss of a bargain, it is here held that a judgment of specific performance would be harsh, oppressive, unjust, inequitable and unfair to the plaintiffs; and the defendant's counterclaim will as well be dismissed.
Judgment will be entered accordingly.