SUFFERN and GALLOWAY, appellants, and BUTLER and BUT-
LER, respondents.

1. An agreement endorsed on a mining lease, and stipulating " that the
parties of the second part shall, at the expiration of two years from the
date hereof, pay unto the said W and D the sum of $10,000 in lieu of the
ten per cent. agreed upon in said lease, then the said W and D shall make
a good and lawful deed of conveyance for the above described premises in
the within lease, &c.," held to be an absolute agreement by the lessees to
purchase the leased premises at the end of two years.

2. This being the plain import of the words of the contract taken in
their ordinary sense, the court is bound to presume, in the absence of any
allegation of fraud or mistake, that such was the real meaning of the
parties.

· 3. When the language of a written contract is ambiguous, or otherwise
doubtful, evidence from without is admissible to show the real intent of the
parties.

4. But such evidence can not be admitted when the language is so clear
and explicit as to leave no room for doubt as to its meaning.

The opinion of the Chancellor is reported in 4 *C. E.
Green* 202.

*Mr. Ransom* and *Mr. Bradley*, for appellants.

*Mr. Woodruff* and *Mr. A. S. Pennington*, for respondents.

The opinion of the court was delivered by

WOODHULL, J.

The appellants found their claim to relief wholly upon the
instrument called the mining lease, the effect of which, as
they insist, is to give them a perpetual right to enter and
to conduct mining operations upon certain lands of the re-
spondents. Another agreement, stated to have been exe-
cuted some days after, but bearing the same date as the
lease and endorsed thereon, is set out at length in the bill,
not because anything was claimed under it, but for the pur-
pose of raising and pressing upon the attention of the court

a question of construction, which the appellants perceived to be vital to their case. It should be observed that there is no allegation in the bill that the endorsed agreement is in any respect different from what the parties intended it to be; that there has been anything left out of, or added to it, through fraud or mistake. But taking the writing as it stands, the appellants endeavor to show that its true purpose and meaning was not to affect in any way the terms of the mining lease, so far as the respondents are concerned, but merely to confer upon the original lessees an additional privilege, which they might exercise or not, at their option; and that they having, at the proper time, elected not to exercise it, the agreement has ceased to exist as a contract. If the appellants are able to maintain this construction, they may be entitled to the relief for which they ask; if they cannot do this, the very foundation of their suit fails. For if the endorsed agreement should turn out to be absolute, and not in any sense conditional or optional, the inevitable effect of it will be to control and modify the stipulation of the mining lease, so as to restrict the operation of that instrument to the term of two years from its date; a term which had already expired before the commencement of this suit. What then is the true construction of the endorsed agreement? Does it mean that the lessees were to pay the $10,000 at the end of two years, unconditionally, or only that they were to do so in case they should elect to take the property? The language is, " that the parties of the second part shall, at the expiration of two years from the date hereof, pay unto the said William and Daniel Butler, &c., the sum of $10,000 in lieu of the ten per cent. agreed upon in said lease, then the said William and Daniel Butler shall make, &c., a good and lawful deed of conveyance for the above described premises in the within lease, &c." Considering this instrument as standing alone, and giving to its words their plain and ordinary meaning, we have failed to discover in it anything to support the construction contended for on the part of the appel-

lants. Its stipulations are that one party *shall pay*, that the other party then *shall convey.* The obligation to convey is made to depend upon the payment, but the obligation to pay, or in other words, to purchase the property at the end of two years, is made absolute and unconditional, as clearly so as language could well make it. For while it is true that this writing is neither grammatically expressed, nor skillfully drawn, it is equally true that the substantial parts of it, the terms of the contract, are so clear, definite, and certain, as to leave little room for construction. It is nothing to the purpose to say that the real meaning of the parties was that the payment of the $10,000 should be conditional, and at the option of those under whom the appellants claim. The plain answer is, that we are asked not to reform, but to construe this agreement, and in the absence of any allegation of fraud or mistake, we are bound to presume that if such had been their meaning they would have used words proper to express it, or at least words which might, without doing violence to the laws of language, bear that signification. If they have failed to do this they have placed themselves beyond the power of any court to help them by construction. For while courts are always solicitous to ascertain and carry into effect the real intentions of the parties, they can do this only within certain well established limits. "The rule of law," says Professor Parsons, "is not that the court will always construe a contract to mean that which the parties to it meant; but rather that the court will give to the contract the construction which will bring it as near to the actual meaning of the parties, as the words they saw fit to employ when properly construed, and the rules of law, will permit. In other words, courts can not adopt a construction of any legal instrument which shall do violence to the rules of language, or to the rules of law." 2 *Parsons on Con.* 494, 495.

The endorsed agreement then, taken by itself, can not be judicially understood to mean what the appellants contend for. Can it be so understood when considered in connec-

tion with the mining lease ? It is urged on the part of the appellants, that these two writings, although executed at different times, are evidently parts of one and the same transaction, and should therefore be construed together, and with reference to each other, for the purpose of ascertaining from both the real intention of the parties; that considered in this way, their construction of the second will be found to be the only one not repugnant to the terms of the first; and that it is unreasonable, if not absurd, to suppose that of two agreements made and executed so nearly together as these were, between the same parties, written upon the same paper, bearing the same date, and relating to the same property, the second could have been intended to operate to the destruction of the first. The force of this argument depends entirely upon the assumption that the two agreements were not only executed as parts of one transaction, but that they were conceived at the same time. It would be absurd to suppose that the parties intended to grant a perpetual right, and at the same moment of time intended to restrict that right to two years. But if the second agreement had no existence, even in the minds of the parties, until after the execution of the other, as we think sufficiently appears from the statements of the bill and from the testimony, instead of being absurd or unreasonable, nothing would seem more likely than that the second agreement should have been intended to modify, in one way or another, the terms of the first. It is further urged by the appellants, that their construction, even if not appearing from the writings themselves to be the true one, must nevertheless be taken to be true as against the respondents, on the ground that, by their own acts and admissions, they are estopped from denying it.

Where the language of a written contract is ambiguous, or otherwise doubtful, such evidence is admissible, and may be very convincing to show the real intent of the parties. But to admit it when the language is so clear and explicit as to leave no room for doubt as to its meaning, would be to

disregard the familiar rule, which, while it permits the introduction of evidence from without for the purpose of explaining, prohibits it for the purpose of contradicting or varying a valid written contract.    2 *Parsons on Con.* 547.

Not finding in either of these instruments, considering them separately or together, and in the light of the circumstances under which they were executed, anything to warrant us in holding the second agreement to be conditional or optional against the plain import of its language, and not being permitted in such a case to resort to evidence outside of the writings for the purpose of imposing upon them a meaning different from that which appears clearly on their face, our conclusion is, that the appellants have failed to make out their case, and must therefore be denied the relief which they ask for.

Other questions of much interest, relating chiefly to the execution and character of the contract called the mining lease, are treated of in the opinion of the Chancellor, and were fully and ably discussed before this court, but the conclusion we have come to on the question of construction, which met us at the threshold of the case, renders it unnecessary to consider the others.

Let the decree of the Chancellor be in all things affirmed.

The whole court concurred.