CRANE and wife, appellants, and DECAMP and others, respondents.

1. Where a deed, absolute on its face, is given as a security for the payment of money, by or for the grantor tó the grantee, it will be held in equity that the grantee took the premises subject to redemption.

2. Upon an application for a specific performance of a contract, the court must be satisfied that the claim is fair, reasonable, just, and equal, in all its parts.

3. To determine these qualities, the court will look not merely at the terms of the agreement, but at the relations of the parties, and the surrounding circumstances.

4. A party seeking the specific performance of a contract, must show that he has performed, or been ready and willing to perform all the essential terms of his contract.

5. Time and modes of payment, attended by special circumstances of hardship and loss caused thereby, are circumstances to be weighed by the court in exercising a sound legal discretion.

6. The surrender of a written contract of sale, followed by acts inconsistent with the continuance of the same, such as negotiating a sale to another party by the surrenderer for the benefit of the surrenderee, held to be in equity a rescission of such contract.

---

*Mr. J. F. Randolph* and *Mr. Williamson,* for appellants.

*Mr. Linn* and *Mr. C. Parker,* for respondents.

The opinion of the court was delivered by

SCUDDER, J.

The facts in this case are stated in the opinion of the Chancellor, 4 *C. E. Green* 166, and it is not necessary to repeat them here. Such additional particulars as are deemed important will appear in the examination of the questions submitted to this court in the appeal taken by the defendants below.

By the decree, it is adjudged that Augusta Decamp, deceased, late wife of said Edward Decamp, was at the time of her death the equitable owner in fee of the lot of ten acres, by her conveyed to her sister, Eliza A. Crane, (formerly Scott,) described in said bill of complaint; that said lot was by her conveyed to her sister only by way of mortgage, and that her children, William S. Decamp, Allen F. Decamp, Edward F. Decamp, Susan A. M. Decamp, Alfred H. Decamp, Clarence A. Decamp, and Mary Ann Decamp, are now entitled to the same, subject to the tenancy by the curtesy of their father, the said Edward Decamp, and subject to and on payment of the sum of money hereinafter men-

tioned, and to a conveyance thereof, if the money for which the same is held by said Eliza A. Scott, shall appear to have been, or shall be paid.

· And it was further adjudged, that the said children are further entitled to a conveyance to them, in their own right, as tenants in common,· and free from any right or claim of their father, to the tract of eight acres in said bill set forth and described, and set off to said Eliza A. Crane (formerly Scott); that the same was by the said Eliza legally sold, and agreed to be conveyed to the said Augusta Decamp for the price of $6000, and if it shall appear that said sum has been duly paid to her, the said Eliza A. Crane and Lewis C. Grover, her trustee, ought to convey, and the said children are entitled to a decree that they do convey the same to them..

And it was further decreed that an account be taken and stated between the parties.

The appeal is to the entire decree, and we will consider the several matters therein adjudged in their order.

The first named lot of ten acres is held by the appellant, Eliza A. Crane, under a deed of conveyance from her sister, Augusta Decamp, now deceased, and Edward Decamp, her husband, dated March 3d, 1854.

This conveyance is absolute on its face, but it is evident from the facts proved that Augusta never intended to sell this lot to her sister, and that the title was given to Eliza as security for the payment, by the rents, of the money she had assumed to pay for Mr. and Mrs. Decamp, at their request, and for which she had given her individual bond for $10,000 to Charles Jackson, jun., secured by mortgage upon this ten acre lot, and the eight acre lot of Eliza joined with this in the lease; and also as security for the payment of the purchase money of Eliza's eight acre lot which Mrs. Decamp had agreed to purchase for the sum of $6000; and for all other liabilities which she had paid and assumed for them, or either of them.

A court of equity ·will give this deed effect according to

the intention of the parties at the time it was made, and will accordingly decree that the appellant, Eliza A. Crane, took this ten acre lot subject to redemption by the respondents. This is familiar law. 4 *Kent's Com.* \*141; 1 *Wash. Real Prop.* \*479; *Youle* v. *Richards, Saxt.* 534; *Crane* v. *Bonnell,* 1 *Green's Ch.* 264; *Clark* v. *Condit,* 3 *C. E. Green* 358. This right to redeem has never been released or surrendered; consequently there is no error in the decree directing a reconveyance of this ten acre lot, upon payment of the amount secured by such former conveyance.

The second point in the decree, directing a conveyance of the eight acre lot of Mrs. Crane to the respondents, presents a different and more difficult question.

It is claimed that there was a contract for the sale of this lot by Eliza A. Scott to her sister, Mrs. Decamp, for the sum of $6000, payable by the first arrangement between them, one-half in cash from the proceeds of the mortgage to Charles Jackson, jun., and the balance in equal installments, at four, eight, and twelve months, with interest; that afterwards, when Decamp received the money from Jackson, he paid Eliza $900, retaining the remaining $2100 for his own use; to which she assented, and agreed to wait for the payment of the same for six months, or a year, and for the remaining $3000, the balance of the purchase money ($6000) until after the rents of the mines had paid Jackson his $10,000 and interest, when her said last payment should be taken from such rents. Decamp was to pay her interest for the same, half yearly afterwards; the payment of the entire sum of $5100 was postponed until the payment of the bond and mortgage and interest, but interest thereon was to be paid as above stated.

These different agreements were verbal. But several months after (the parties do not speak definitely as to the time), the last arrangement was put in writing by the attorney of Mr. Decamp, and signed by Eliza A. Scott, alone. She says it was a proposition on her part which they have not complied with, and thereby it was forfeited. They say it was a

contract for the sale of her lot upon the above terms.    She says it was surrendered by them to her and destroyed by her.    They say it was only sent to her at her request, without any consent to its destruction, and that, if destroyed, it is still a subsisting, valid contract, and they pray a specific performance.

Although the evidence is somewhat conflicting and uncertain, I shall assume that there was an agreement signed by Eliza A. Scott, of the purport claimed by Mr. and Mrs. Decamp, and inquire whether, with this admission, they are entitled to a specific performance of the contract.    This is an application addressed to the sound, legal discretion of the court.    There is no rule in equity more clearly established, than that upon an application for a specific performance of a contract, the court must be satisfied that the claim is fair, reasonable, and just, and the contract equal in all its parts. If these points are not established by the complainant he will be left to his remedy at law.    Seymour v. Delancy, 3 Cow. 445; Stoutenburgh v. Tompkins, 1 Stockt. 332; Fry on Spec. Perf. *106; Talbot v. Ford, 13 Sim. 173.

In judging of the fairness of a contract, the court will look not merely at the terms of the agreement itself, but at the relations of the parties and all the surrounding circumstances.    Fry on Spec. Perf., § 239.

Let us examine these.    Eliza A. Scott, at the time of this agreement, was unmarried, living in the most intimate relations with her sister and her husband.    He was her agent in the management of her business, trusted by her and having her entire confidence.    This appears by all the facts in the case.    Under these circumstances he was held to the utmost good faith in all his dealings with her.    He took advantage of this confidence to get her endorsements on his paper, which he failed to pay, and put her thereby in pecuniary straits and difficulties.    Her inducement to sell this eight acre mining lot was chiefly to raise money to relieve her from her embarrassments caused by these endorsements. They made an arrangement with her by which they secured

their own lot from seizure for his debts, relieved it from pressing encumbrances, and put the burden of $10,000 of Decamp's debts upon her and her property, the payment being assumed and secured by her bond and mortgage. The unproductiveness of the mines at that time, and the uncertainty that the rents would be received to pay the bond and mortgage, cast the entire risk of failure upon her. She must pay her bond in any event. They provided for the payment of the purchase money of her lot in part from the product of her own land, including her wood lot, and imposed no responsibility upon themselves to pay anything, except as the rents of their mining lot might, if productive, contribute towards such payment. Notwithstanding her need of money at the time, as they knew, they extended the time of payment for her lot until after the rents should pay the bond and mortgage for $10,000 to Jackson, and the interest; meanwhile she was to pay taxes upon the entire property.

The result was, that at the time of filing this bill in April, 1860, six years after the lease was made, she had received not over $200 of the rents on her personal account, and had expended more than twice that amount for taxes. The bill was filed just as the property was becoming productive to her. Before this, during the delay of payments, she had been obliged to sell other property, which she wished to hold, at a sacrifice, to meet Mr. Decamp's debts and her own expenses.

The lease, bond and mortgage by which she thus bound herself, were prepared by Mr. Decamp's attorney, under his direction; the amount of the mortgage increased from $6000, as originally agreed, without consultation with her, to $10,000. These papers were brought to her, and she was called out of church by Mr. Decamp to sign the same hastily, without time for explanation or consideration, doing whatever he requested her to do, not questioning his good faith. It thus appears that he used her confidence to make a safe, good bargain for the benefit of himself and wife, to her great detriment and loss.

Not only was the agreement, under these circumstances, unfair and inequitable, but the respondents were in constant laches in its performance on their part. Mr. Decamp did not pay her the sum of $3000 on account of the purchase money of her lot, as first agreed upon. He did not pay her the balance after payment of $900, as agreed upon, in four, eight, and twelve months' installments. After he had induced her to wait almost indefinitely for the $5100, by their last arrangement he does not pretend that he ever paid her one dollar of interest, although it was stipulated that it should be paid half-yearly.

A party seeking the specific performance of a contract must show that he has performed, or been willing to perform, all the essential terms of his contract. And it is material to consider how far the reciprocal obligations of the party seeking the relief have been fairly and fully performed. 1 Story's Eq. Jur., § 736; Thorp v. Pettit, 1 C. E. Green 488; Colson v. Thompson, 2 Wheat. 336; Fry on Spec. Perf., § 641.

While the time and mode of payment are not usually of the essence of a contract, they may be made so by changes in the subject matter, and by special circumstances of hardship and loss. Alley v. Deschamps, 13 Ves. 225; Harrington v. Wheeler, 4 Ves. 686; Lloyd v. Collett, 4 Bro. C. C. 469; Benedict v. Lynch, 1 Johns. Ch. 370; Fry, §§ 718, 719; 3 Lead. Cas. in Eq. 78., &c.

The continuing failures of the complainants to make payments, and the long extensions, were as they knew, vexatious and harrassing in the straits and embarrassments from which she was suffering, and they are circumstances to be weighed by the court in exercising a sound 'legal discretion.

Thus considering the relations of the parties and the circumstances of this case, I should be unwilling to decree a specific performance of this agreement, proposition, or writing, giving it all the terms and purport which the respondents claim for it, even if it were existing at this time.

But the case shows further that the complainants,

Decamp and wife, abandoned any equitable right which they might have to enforce the specific performance of the contract for the sale of Mrs. Crane's lot.

This paper, after it was signed by Miss Scott, was given by her to her sister, Mrs. Decamp, and retained by her for some months, and then at the request of Miss Scott delivered up to her. The complainants do not explain why or how this was done, and give no rational account of the surrender of the only evidence of their agreement. They do not allege any fraud or deception; nor does it appear that they ever even demanded it of her again. Two years after it had been given up, March 2d, 1857, Decamp wrote to Miss Scott a letter, in which occurs the following: " Augusta is feeling some anxiety to know something respecting what claim she has to the mining property at Hibernia, as the article of agreement she once had of you was returned, I think, at your request." Here is no assertion of right, or demand for a return. It assumes that she has entire control, and asks what the rights of Mrs. Decamp then were.

The evidence shows further the considerations of the surrender of this paper: Mr. Decamp had failed to make his payments to her, Eliza; was pressed at the time for money for the payment of his debts. She was dissatisfied with the terms of payment that had been imposed upon her, and desired to sell her lot to raise money. She thought both lots would sell better together, and desired them to join her in selling their lot. They apparently consented, and he aided her to sell the entire leased premises to Edward L. Dayton, February 18th, 1858, for $8000. By a secret arrangement with Dayton they reserved their lot, and provided for a reconveyance to Mrs. Decamp without consideration. Eliza signed the agreement with Dayton, and destroyed the other agreement at or about that time, supposing, as she says, it was of no further use. Dayton paid her $1400 on account of the purchase money, and afterwards was compelled, by inability to make the payments, to give up the purchase.

This $1400 was used by her in payment of her liabilities for Mr. Decamp.

I consider the surrender of the agreement, and the subsequent sale of this lot by her, with their knowledge and part in the negotiation, a rescission of the contract for the sale of Eliza's lot. Their conduct in the negotiation is utterly inconsistent with their claim now as purchasers under that agreement. Even where the original agreement is under seal, it may be rescinded in equity by a parol agreement, evidenced only by conduct. *Fry on Spec. Perf.*, § 694; *Walker* v. *Whales*, 2 *Humph.* 119; *England* v. *Jackson*, 3 *Humph.* 584; *McCorcle* v. *Brown*, 9 *Sm. & Marsh.* 167; *Dominick* v. *Michael*, 4 *Sandf. S. C. R.* 426; *Hill* v. *Gomme*, 1 *Beav.* 540.

It thus appears, while Miss Scott was willing to sell her lot to her sister, Mrs. Decamp, and agreed to sell, yet the terms of the contract were unfair and inequitable, the payments were vexatiously and injuriously delayed, and that the contract for the sale of this lot has been rescinded. It would be most unjust and inequitable, after the property has become productive and increased in value, to compel the appellants to convey both lots to Mr. Decamp and his children; while it appears most equitable under the circumstances, that each party should have their own lot, subject to the lease, and entitled to the rents ratably during the remainder of the term, and that an account should be stated between them up to this time.

Let an account be taken of all the rents paid for the leased premises, and interest, from which deduct the taxes and interest thereon.

Apportion the balance of rents, after the payment of taxes, *in proportion to the value to the tenant under the lease*, of the respective lands late of Augusta Decamp, deceased, and of Eliza A. Crane, (including her wood lot).

Charge the rents and interest to the party receiving such rents, and credit the taxes to the party who has paid the same.

Charge the respondents' share with the sum of $9100 re-

ceived from Charles Jackson, jun., and interest on the same from time of receipt.

Charge the appellants' share with the sum of $900 received, part of the moneys paid by Charles Jackson, jun., and interest thereon from the time of receipt.

A further account must be taken of moneys advanced and liabilities incurred by Eliza A. Scott, (now Eliza A. Crane,) to and for Edward Decamp, and Augusta his wife, and each of them, at their or either of their request, and of the credits to them or either of them, by payments on account of such advances and liabilities. The said Eliza A. Crane is also to account for the value of two hundred and forty shares of stock of the Charlottenburg Iron Company, if the same has been received by her from Edward Decamp, and disposed of by her; or if she still holds the same undisposed of, then said stock shall be re-assigned to said Edward Decamp, upon the adjustment of the balance of account between them.

Upon statement of the balances, the respondent, Edward Decamp, will be entitled to receive the balance apportioned to the lot late of Augusta Decamp, deceased, in right of said Augusta, to the date of her decease, and in his own right since her decease, as tenant by the curtesy, subject to the charge and discharge above named; and the appellant, Eliza A. Crane, will be entitled to receive the balance apportioned to her mine lot, and wood lot, subject to the charge and discharge aforesaid.

Upon taking such account the amount received by Mrs. Crane from Edward L. Dayton must not be charged against her, and the sums received by either party upon sales of ore on special contracts with the lessee, will not be estimated.

If it shall appear upon the statement of the account as aforesaid, that there is a balance due from said Eliza A. Crane to said Edward Decamp, such balance shall, and it is hereby adjudged to be charged upon her mining lot of land described in the pleadings, until such balance is paid.

The lot conveyed by Edward Decamp and Augusta his

wife, to said Eliza A. Crane, m'st be reconveyed by the appellant to said Edward Decamp, as tenant by the curtesy, and to the children of his deceased wife, in fee, subject to his curtesy, upon the adjustment of any balance against him, if any such there shall be, on the coming in of the master's report.

The decree of the Chancellor should be reversed upon the second point in said decree, directing a conveyance by the respondents of the lot of said Eliza A. Crane to the children of Augusta Decamp, deceased.

The whole court concurred.