GEORGE W. KENNEDY, administrator, &c.,

v.

TRANQUILITY CEMETERY COMPANY.

[Submitted June 14th, 1915.   Decided June 28th, 1915.]

1. Upon a bill for an accounting there are two inquiries, the first of which is whether the complainant is entitled to an account at all, and the other of which relates to the state of the account.   In determining whether the complainant is entitled to an account, the only material evidence on the original hearing is that going to prove the right to an account and the ordinary decree is that an account shall be taken, and if it should appear that complainant is not entitled to an account, the bill will be dismissed.

2. Before the complainant can put the defendant to the trouble and expense of an accounting before a master, he must demonstrate by preponderance of evidence that there is not only a duty to account, but a substantial claim from which he may have a reasonable degree of certainty of recovering a sum which is not beneath the minimum limit of the court's jurisdiction.

3. A cemetery association was incorporated by a special act approved April 4th, 1873 (P. L. 1873 p. 1523), making the amount paid for its land and the amount expended in improvements its capital stock, divided

into shares of $10 each, and providing that one-half of the net proceeds of lots should be used for improvements and the balance divided among the stockholders. It issued to its promoters all of its capital stock without consideration, and continued in debt until 1911, when it received about $1,000 from a purchaser of lots which amount was needed for improvements.—*Held,* that, even if the issuance of stock was within the legislative authority, promoter and stockholder was not entitled to an accounting.

4. Where the stockholders of an incorporated cemetery association permitted its affairs to be conducted by trustees elected by the lotholders and acquiesced in their management, the lotholders might lawfully conduct the affairs of the association under "An act to regulate cemeteries," act March 24th, 1899 (*P. L. 1899 p. 324*) and act March 13th, 1901 (*P. L. 1901 p. 64*), declaring that the management of cemetery associations shall rest in a board of trustees, who shall be lotholders.

On final hearing on bill, answer, replication and proofs.

*Mr. George M. Titus,* for the complainant.

*Mr. William H. Morrow,* for the defendant.

HOWELL, V. C.

The Tranquility Cemetery Company was incorporated by a special act of the legislature approved on April 4th, 1873. *P. L. 1873 p. 1523.* The act contains the following provision:

"The sum of money which the corporation may agree to pay for the tract of land to be used and occupied as before mentioned, and the sums of money which may be expended in embellishing, improving, beautifying, erecting fences and buildings, and in making all needful repairs, shall be the capital stock of said association and shall be divided into shares of $10 each, and that the net proceeds of all lots sold shall be appropriated to pay the purchase-money for the land conveyed to the association, and that after the purchase-money shall have been fully paid and satisfied, then one-half of the net proceeds of all lots sold thereafter shall be appropriated or funded for the purpose of maintaining improvements made or to be made, and the building or repairing of all houses or buildings erected upon the lands of the said association, and the balance of the proceeds of such sales shall belong to and be divided among the stockholders according to their several interests."

The promoters of the enterprise were the complainant, George W. Kennedy, and his brother Edgar V. Kennedy. They made

the arrangements for the purchase of the lands, procured the same to be laid out and plotted on a map, and to be graded and planted with trees, and so prepared for cemetery purposes; and caused the title to the same to be transferred to the corporation. The corporation paid off the purchase-money and the moneys which the promoters had expended in embellishing and beautifying the grounds, building fences, &c., and has continued its operations as a cemetery association ever since. It has purchased more ground, made other improvements, cared for and protected the whole property, embellished and beautified it as well as it could with its limited income. This income has hitherto been wholly derived from the sale of burial plots, and it has been so scanty that the association has been under the necessity of anticipating its income and of borrowing money from time to time to carry out the objects of its incorporation. It happens, just at the present time, that by reason of a large purchase the association has in hand eight or nine hundred dollars which the complainant claims is subject to the exigency of this suit.

After the claim of George W. Kennedy for purchase-money paid by him, and other advances had been satisfied, the association issued to him one hundred and forty-five shares of its capital stock, such issue having been made June 11th, 1874. On June 15th, 1876, these shares were transferred to Rebecca J. Kennedy, his wife, and upon her death the same came to him as her personal representative.

The case shows that at or about the time when the certificates of stock were issued to George W. Kennedy, similar certificates of a like amount were issued to his brother Edgar V. Kennedy. The theory evidently was that when the corporation had paid or provided for the payment of the purchase-money so that the claim of the original grantors therefor should be wholly satisfied, then the association might issue its shares of stock in pursuance of the section of the charter hereinabove quoted. I do not feel certain that this is the proper construction of the legislative authority. The construction so adopted gives to the two promoters the total issue of stock and complete control of the property and business of the corporation, and that without any consideration whatever except the pains and trouble they had

taken to put the enterprise on its feet. It may well be doubted whether the legislature intended any such result as that. The question is not easy of solution, and I shall not attempt to decide it at present, for the reason that there are other grounds on which the rights of the parties must be adjudicated. It is possible that the scheme which was contrived by the promoters may come within the purview of the opinion of Vice-Chancellor Stevens in *East Ridgelawn Cemetery Co.* v. *Frank, 77 N. J. Eq. 36.* .

But conceding, for the sake of the argument, that the share interest in this enterprise which is claimed by the complainant is a valid one, the question arises whether the association is liable to account to the complainant for one-half the purchase price of all the lots which have been sold. He now contends that each sale is a transaction by itself, and that immediately after the purchase-money was fully paid it was the duty of the association to divide the money derived from the sale of lots as each lot was sold and distribute the one-half part thereof to the stockholders. If this is the correct situation, it seems strange that the complainant should have allowed another and a quite different theory to prevail for so many years. Not until this suit was brought does any contention of this character appear, and I conclude that this is introduced as a mere afterthought, and that it forms no portion of the original plan as the same presented itself to the mind of the complainant.

In bills for an accounting there are always two inquiries. The first is whether the complainant is entitled to an account at all; the other relates to the state of the account. For the purpose of determining the first question the court listens to evidence upon the original hearing tending to develop the fact of liability. Chancellor Green says, in *Hudson* v. *Trenton Locomotive Co., 16 N. J. Eq. 475,* that upon a bill for account the only material evidence upon the original hearing is that which conduces to prove the complainant's right to an account, and that the ordinary decree is that an account shall be taken. On the original hearing, therefore, the court will determine whether the defendant is bound to account, and, if so, will settle the principles upon which the account must be taken. If it should appear upon such

original hearing that the complainant is not entitled to an account from the defendant, then the bill will be dismissed. Applying that principle to the case in hand we find that until 1911, or thereabouts, there never was a time when the cemetery association was not in debt. This indicates either that the purchase-money of the land had not till then been fully paid up or that the business was a losing venture from the start. If the association was always in debt up to that time, how could there be anything due to the complainant upon his own theory of his cause of action? His only ground could be that the persons in charge of the association's affairs had robbed it of its funds, but this is nowhere shown, or attempted to be shown, by any kind of competent evidence.

What the facts do show, however, is that there is nothing to account for; that up to this time all the income of the association has been needed to carry on its business as a cemetery corporation, and that it never has made any profits or had in hand any money which was not immediately needed for expenditure upon the cemetery grounds. Before the complainant can put the defendant to the trouble and expense of an accounting before a master, he must demonstrate by a preponderance of evidence that there is not only a duty to account, but a substantial claim from which he may have a reasonable degree of certainty of recovering a sum which is not beneath the minimum limit of the court's jurisdiction. I do not think that the complainant has shown any such situation, and, therefore, in my opinion, he is not at the present time entitled to an accounting from the defendant, even were there no doubt whatever about the standing of the so-called shares.

The money now in hand amounting, as it does, to something less than a thousand dollars, happens to be in the association's treasury, because a single individual recently bought from the association a large plot in the cemetery, and this money, as is abundantly shown by the evidence, is immediately needed for the purpose of plotting out more of the cemetery company's land into burial plots, for repairs, painting the fences and the gates, grading and preparing other lots for sale, introducing water and continuing the work of embellishing and beautifying

the grounds. It undoubtedly was intended by the legislature that the enterprise should be self-supporting, and was not intended that stockholders who received their stock without consideration should take one-half of the proceeds of the sales of lots and leave the association to depend for its existence, embellishment and beautification upon the voluntary contributions of people owning lots therein.

Early in the history of the association the stockholders seemed to have abandoned their function and to have permitted the affairs of the association to be conducted by the lotowners. At any rate, for the last twenty years or more, the lotowners have conducted all the affairs of the association by trustees elected by themselves and not by the so-called stockholders. Complaint is made of this, and it seems to be alleged by way of aggravation of the charges against the association; but in my view the action of the lotowners was acquiesced in by the stockholders, and, according to the testimony of some of the witnesses, was expressly authorized by them at a meeting called for the purpose of considering the question. At any rate, the lotowners have been, and are now, conducting the affairs of the association, and at the present time are doing so, as it appears to me, lawfully, in pursuance of the authority of an act of the legislature entitled "An act to regulate cemeteries," found in *P. L. 1899 p. 324* and *P. L. 1901 p. 64*.

I do not think, therefore, that the complainant derives any advantage or loses any right by reason of the fact that the business of the association is being conducted by the lotowners instead of the stockholders.

My opinion, therefore, is that the bill must be dismissed.