The purpose of the bill in this cause was to compel the specific performance of certain terms and conditions contained in a lease executed September 25th, 1925, by the respondent, hereafter referred to as the owner, to one Matthew J. Makus. The appellant, by mesne assignments, acquired the lease on July 10th, 1928, and is now the tenant. The property involved is situated at Nos. 649-651 Pavonia avenue, Jersey City, and was leased for a term of twenty-five years, with a provision that at the termination thereof, the tenant had the *Page 15 
privilege, if he so elected, to extend the lease for an additional twenty-five years. The provision in the lease, upon which the tenant bases its right to relief, is as follows:
"That the said lessor shall permit the said lessee, his successors or assigns to raise cash to an extent not to exceed two-thirds (2/3) of the value of the cost of said improvement, which money is to be secured by a bond and mortgage to be executed by the lessor, its successors or assigns, and to be a lien upon the said demised premises, and the buildings and improvements thereon. That said two-thirds of the cost of the said improvement is not to exceed the sum of fifty thousand dollars ($50,000); that the said bond and mortgage shall remain a lien upon the said demised premises and the improvements erected thereon.
"It is further agreed that the lessee shall pay all interest on the said mortgage, so raised during the term of this lease, or the term of the said bond and mortgage, said interest to be paid within thirty days from the due date.
"It is further agreed that the improvements so made on the said premises shall be the property of the lessor, subject to this lease."
The facts as presented by the record show that the tenant paid $25,000 to acquire the lease, after which it erected a building on the land, costing approximately $150,000. It then proceeded to negotiate for a mortgage loan of $50,000, as provided for by the terms of the lease. An application was made by the tenant, in the name of the owner, to the Mutual Benefit Life Insurance Company, of Newark, New Jersey, which granted the loan. The tenant then forwarded to the owner, for execution, a bond and mortgage, in favor of the insurance company, in the sum of $50,000, payable in five years from the date of execution with interest, at the rate of five and one-half per cent. per annum, payable semi-annually, and containing an acceleration clause upon a thirty-day default in the payment of interest. The owner refused to execute the documents, claiming that to do so would place the obligation of paying the principle on the lessor, which was contrary to the terms and intent of the lease.
The tenant then filed its bill, praying that the owner be decreed to execute a bond and mortgage, containing the same terms and conditions as the one submitted, and deliver same to the insurance company, or such other mortgagee as the *Page 16 
tenant might procure. The tenant contends that under the lease, it was the duty of the owner to pay the mortgage debt, and the vice-chancellor held, that the payment of the loan was the obligation of the tenant, and not the owner, and we think that an examination of the lease warrants this conclusion. It seems apparent that the intent and purpose of the parties was that the tenant, if it so desired, could borrow a sum not exceeding $50,000, provided it represented not more than two-thirds of the cost of the improvement, and the owner would lend its credit and furnish its property as security, so that the loan could more readily be obtained. The lease further provided, that the mortgage should remain a lien on the demised premises, indicating a purpose to allow ample time to the tenant to discharge the debt. This construction is supported by the testimony of the attorneys who prepared the lease, and also by the original lessee, Matthew J. Makus, who testified that the parties to the lease understood and intended that the mortgage debt should be paid by the tenant, through an amortization process, whereby it would be extinguished within a period of twenty-five years. The tenant argued that it was error to allow testimony for the purpose of explaining the true intent of the parties, and as to what construction they placed upon the instrument at the time of execution, and alleges that such action was contrary to the rule which excludes parol testimony to contradict or vary a written instrument. We think this contention is without merit. The purpose of receiving evidence of this character was stated by the vice-chancellor, at the time it was admitted, when he said: "It is not admitted and will not be considered for the purpose of changing or altering by oral testimony a written contract. It may be considered for the purpose, as already indicated, of determining whether under all the circumstances, specific performance will be allowed and if allowed upon what terms." It is well settled, that when the language of a written contract is ambiguous or otherwise doubtful, parol evidence is admissible, not to contradict or vary the terms of a written agreement, but to explain how it *Page 17 
was to be carried out, as such evidence may be very convincing to show the real intent of the parties. Willis v. Fernald,33 N.J. Law 206; Suffern and Galloway v. Butler, 21 N.J. Eq. 410.
The owner, both at the hearing and in its argument, presented a technical defense that the contract in respect to the terms of the mortgage, is incomplete, uncertain and indefinite in its material facts, and fails to express the intent of the parties, and therefore, equity should not decree a specific performance. The vice-chancellor properly disposed of this contention, on the ground that the owner could not escape its responsibility under the contract, after the tenant's part had been performed, upon the plea that the owner's duties thereunder were not definitely set forth, and stated: "In such circumstances, when a contract has been partly executed, and there is not adequate remedy at law, equity `will strain its powers to enforce complete performance.' Fry Spec. Perf. (6th ed.) 155; Cavanna v.Brooks, 97 N.J. Eq. 329." However, the owner, both in the answer and argument, alleges that it is and has been at all times ready and willing, to execute and deliver a bond and mortgage, in accordance with the true intent and meaning of the provisions of the lease, and that upon the execution of such mortgage, it should be entitled to be guaranteed, protected and saved harmless, by the tenant, against any liability to pay the principal of the mortgage, or any part thereof. It appears from the record, that during the hearing, the tenant consented to give security that the principle of the mortgage would be paid by it, in the event that the court found that the debt was one of the tenant, and that the owner should execute a mortgage for the amount provided for in the lease.
The learned vice-chancellor, after overruling the technical defense advanced by the owner, refused to grant any relief to the tenant, and dismissed the bill, for the reason that the tenant had not sought relief "with perfect propriety of conduct," and also that the tenant was guilty of an unconscionable attempt to over-reach the owner, for which the usual penalty was denial of relief. This action was based mainly *Page 18 
on the court's interpretation of two letters which the tenant had sent to the owner, asking permission to raise a mortgage on the premises of $100,000, stating that if this was allowed, the tenant would pay an additional rent of $1,000 each year during the term of the lease. The vice-chancellor held that these communications, together with certain testimony, indicated knowledge, on the part of the officers of the tenant corporation, of the fact that it was the intent and purpose of the parties that the tenant would assume the mortgage debt. It appears that there was testimony given by the attorneys who prepared the original lease, to the effect that one Samuel B. Weisenfeld, who was an officer of the tenant corporation, had knowledge prior to the tenant acquiring the lease, that the tenant would pay the mortgage debt. This is denied by Weisenfeld, who states that his discussion with the attorneys related to the tenant amortizing its investment in the building. We are unable to find anything in the letters or testimony that would warrant relief being denied to the complainant-tenant. The letters were evidently sent for the purpose of making a proposition different from that contained in the lease; and the testimony relied upon is not clear that any definite statement was made in the presence of Weisenfeld, that the mortgage would be the tenant's obligation. The present tenant was not one of the original parties to the contract, and did not acquire the lease until approximately three years after its execution. The lease, in many respects, was indefinite and uncertain, and sufficiently so, to justify the tenant in coming into the court of chancery, for a construction; and we think that the complainant-tenant was entitled to have its legal conception of the lease judicially considered. It does not appear that any of the officers of the complainant-tenant concealed anything from the court, or that they possessed any knowledge to justify holding that their conduct was unconscionable and such as to render their hands unclean, within the maxim which is well defined in the syllabus of the case of The Vulcan Detinning Co.
v. American Can Co., 72 N.J. Eq. 387, as follows: "The maxim, `one who comes into equity must come with clean hands,' is based upon conscience *Page 19 
and good faith, and the bad faith or the unconscionable conduct that will justify the application of this maxim must be based upon actual knowledge or willful fraud."
We conclude that the tenant is entitled to have the lease enforced according to its true intent, by a decree directing the owner to execute a bond and mortgage in the usual form, on condition that the tenant enter into a collateral undertaking with the owner, agreeing to pay the principal debt within the term of the lease, the tenant to be relieved of the payment of counsel fees and costs. Inasmuch as the owner will be secured as to the payment of the principal, we do not think he is concerned regarding the terms of the mortgage in respect to date payable, rate of interest or acceleration clause upon default in the payment of interest.
The decree of the court of chancery is therefore reversed, and the case remanded to that court, in order that a decree may be made, in accordance with the views herein expressed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, BODINE, DEAR, JJ. 4.
For reversal — LLOYD, CASE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 6. *Page 20